**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1991

ALAN M. GRAYSON; AMG TRUST,

    Plaintiffs - Appellants,

  v.

RANDOLPH ANDERSON; PATRICK KELLEY; VISION INTERNATIONAL
PEOPLE GROUP PL.; TOTAL ECLIPSE INTERNATIONAL LTD.,

    Defendants - Appellees,

  and

CHARLES CATHCART; EVELYN CATHCART; YURIJ DEBEVC; CHARLES
HSIN; DERIVIUM CAPITAL USA INC; VERIDIA SOLUTIONS LLC;
SHENANDOAH HOLDINGS LTD; PTS INTERTECH INC; AQUILIUS INC;
OPTECH LIMITED; PAUL ANTHONY JARVIS; COLIN BOWEN; BANCROFT
VENTURES LTD; BANCROFT VENTURES UK LTD; SPENCER PARTNERS
LTD; ISLE OF MAN ASSURANCE LTD; DMITRY BOURIAK; BRYAN
JEEVES; ALEXANDER JEEVES; KRISTINA PHELAN; JEEVES GROUP,
THE; JEEVES HOLDINGS LTD; JAVELIN LTD; LEXADMIN TRUST REG;
ST VINCENT TRUST COMPANY LTD; ST VINCENT TRUST SERVICE LTD;
WINDWARD ISLES TRUST COMPANY LTD; SELBOURNE TRUST COMPANY
LTD; PELICAN TRUST COMPANY LTD; JEEVES GROUP ASIA LTD;
WACHOVIA SECURITIES, INC; JOHN DOE 1; JOHN DOE 2; JOHN DOE
3; JOHN DOE 4; JOHN DOE 5; JOHN DOE 6; JOHN DOE 7; JOHN DOE
8; JOHN DOE 9; JOHN DOE 10; JEEVES COMPANY LTD; ORANGEBURG
METAL TREATMENT CO LLC; ROBERT BRADENBURG; NIGEL THOMAS
TEBAY; JOANNA OVERFIELD BODELL; ISLE OF MAN FINANCIAL TRUST
LIMITED; NIGEL HARLEY WOOD; VISION INTERNATIONAL PEOPLE
GROUP PL; METARIZON LLC, f/k/a Metarizon Solutions LLC;
JONATHAN SANDIFER,

    Defendants.

## 14-1997

GRAYSON CONSULTING, INC.,

        Plaintiff - Appellant,

    and

KEVIN CAMPBELL, Chapter 7 Trustee,

        Plaintiff,

      v.

VISION INTERNATIONAL PEOPLE GROUP PL.; TOTAL ECLIPSE INTERNATIONAL LTD.,

        Defendants - Appellees,

    and

EVELYN CATHCART; CHARLES D. CATHCART CRUSADER TRUST; CATHCART INVESTMENT TRUST; CATHLIT INVESTMENT TRUST; DIVERSIFIED DESIGN ASSOCIATED LTD; DAVID KEKICH; RED TREE INTERNATIONAL; CHARLES HSIN, a/k/a CH Hsin, Chi Hsiu Hsin; FIRST SECURITY CAPITAL OF CANADA INC; MARCO TOY INC; BANCROFT VENTURES LTD; BANCROFT VENTURES UK LTD; WITCO SERVICES UK LTD; JEEVES GROUP, THE; JEEVES COMPANY LTD; JEEVES HOLDINGS LTD; BRYAN JEEVES; ALEXANDER JEEVES; KRISTINA PHELAN; PAUL ANTHONY JARVIS; NIGEL THOMAS TEBAY; COLIN CYPH BOWEN; MORIA THOMPSON MCHARRIE; DAVID ANTHONY KARRAN; NIGEL HAMPTON MCGOWAN; FRANCIS GERRARD QUINN; PETER KEVIN PERRY; BRIAN BODELL; ANDREW THOMAS; EDWARD J. BUDDEN; JOANNA OVERFIELD BODELL; CONISTON MANAGEMENT LTD; JAVELIN LTD; ST VINCENT TRUST SERVICE LTD; ST VINCENT TRUST COMPANY LTD; LEXADMIN TRUST REG; ISLE OF MAN ASSURANCE LTD; ISLE OF MAN FINANCIAL TRUST LTD; SPENCER PARTNERS LTD; SPENCER VENTURE PARTNERS LLC; LINDSEY AG; OPTECH LTD; JACK W. FLADER, JR.; JAMES C. SUTHERLAND; ZETLAND FINANCIAL GROUP LTD; FRANKLIN W. THOMASON; DMITRY BOURIAK; NOBLESTREET LTD; FINANCIAL RESOURCES GROUP LLC; STRUCTURED SYSTEMS AND SOFTWARE INC; EAST BAY CAPITAL VENTURES LLC; CLIFFORD LLOYD; NIGEL HARLEY WOOD; TSUEI CONSULTANTS INCORPORATED,

        Defendants.

Appeals from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (2:07-cv-00593-DCN; 2:07-cv-02992-DCN; 2:08-cv-03129-DCN)

Argued: December 8, 2015                    Decided: March 7, 2016

Before WILKINSON, NIEMEYER, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Diaz joined.

**ARGUED**: Tucker Harrison Byrd, TUCKER H. BYRD & ASSOCIATES, P.A., Winter Park, Florida, for Appellants. Brian Cantwell Duffy, DUFFY & YOUNG, LLC, Charleston, South Carolina; Mark H. Wall, WALL TEMPLETON & HALDRUP, P.A., Charleston, South Carolina, for Appellees. **ON BRIEF**: Katherine A. Stanton, WALL TEMPLETON & HALDRUP, P.A., Charleston, South Carolina, for Appellee Patrick Kelley. Seth W. Whitaker, DUFFY & YOUNG, LLC, Charleston, South Carolina, for Appellee Total Eclipse International Ltd. W. Randolph Anderson, Jr., New York, New York, Appellee Pro Se.

NIEMEYER, Circuit Judge:

Victims of a massive, South Carolina-centered Ponzi scheme -- characterized by fraudulent loans secured by the borrowers' publicly traded stock -- obtained a judgment of over $150 million against Derivium Capital (USA), Inc., its principals, and numerous other participants in the scheme. Alan M. Grayson, AMG Trust, and Grayson Consulting, Inc., three of the plaintiffs, are now pursuing others whom they claim also participated in the scheme.

With respect to the three plaintiffs' claims against Vision International People Group, P.L., a Cypriot company, the district court granted Vision International's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). And with respect to Grayson's and AMG Trust's claims against Randolph Anderson, Patrick Kelley, and Total Eclipse International Ltd. for aiding and abetting common law fraud, the district court granted those defendants' motion for judgment as a matter of law at trial, concluding that the cause of action was not recognized by South Carolina courts.

The plaintiffs filed separate appeals on the two rulings. In the first, the three plaintiffs contend that, because the district court did not conduct an "evidentiary hearing" in which it took live testimony, it should have assessed the Rule 12(b)(2) motion under the more relaxed standard of whether the

4

plaintiffs had made a <u>prima</u> <u>facie</u> showing of personal jurisdiction over Vision International rather than under the more demanding standard that the district court applied, which required them to prove facts demonstrating personal jurisdiction <u>by a preponderance of the evidence</u>. And in the second, Grayson and AMG Trust contend that the district court erred in dismissing their claims for aiding and abetting fraud, maintaining that South Carolina recognized the cause of action in <u>Connelly v. State Co.</u>, 149 S.E. 266 (S.C. 1929).

We consolidated the two appeals by order dated August 26, 2015, and now affirm on both. We conclude that, because the parties engaged in full discovery on the jurisdictional issue and fully presented the relevant evidence to the district court, the court properly addressed Vision International's Rule 12(b)(2) motion by weighing the evidence, finding facts by a preponderance of the evidence, and determining as a matter of law whether the plaintiffs carried their burden of demonstrating personal jurisdiction over Vision International. We also agree with the district court's conclusion that South Carolina has not recognized a cause of action for aiding and abetting common law fraud and that it is not our role as a federal court to so expand state law.

I

Under the fraud scheme referred to as the 90% Stock Loan Program, which began in 1997, borrowers delivered their publicly traded stock to Derivium as collateral for loans in amounts up to 90% of the stock's market value. Because the loans were non-recourse loans, the borrowers could, at the loan's maturity date of usually three years, surrender the stock with no further obligation to pay the loan -- an attractive option if, at that time, the stock's value had depreciated. Alternatively, they could pay the loan and demand return of the stock -- an attractive option if, at that time, the stock's value had appreciated. It was, for the borrowers, thought to be a no-lose proposition.

But the full, undisclosed details of the program, which was designed and implemented largely by Charles Cathcart and Yuri Debevc, two of Derivium's principals, involved Derivium's misuse of the stock. Indeed, the principals sold the stock to fund their personal investments in high-risk venture capital opportunities, and, in the process, they realized substantial personal income from commissions on the stock sales. Although they hoped for yet larger returns on their investments, all but one of the personal investments failed, and Derivium was unable to return the borrowers' stock at the loan maturity dates because it had maintained no capital reserves and had entered

6

into no derivative transactions to hedge against losses. Consequently, to cover the losses, the principals continued to solicit stock from new borrowers and enter into new 90% loans for years after the principals knew that the entire scheme would eventually collapse.

Derivium went into bankruptcy in 2005, and victims of the fraud began commencing actions in 2007 against Derivium, its principals, and other employees and related companies implicated in the scheme. There were more than 50 defendants in these actions. With respect to some of the defendants, the district court consolidated the actions for discovery and trial, and, following trial, a jury returned a verdict in favor of the plaintiffs in the amount of $150,478,525.29. The judgment entered on that verdict was affirmed on appeal.

The plaintiffs in the present appeals then began pursuing claims that had been stayed by the district court pending the outcome of the principal trial. One of the defendants in these resumed cases, Vision International, a Cyprus-based company engaged in distributing health and beauty products outside of the United States, filed a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction over it. To support its motion, Vision International included deposition excerpts, affidavits, and other documents developed during full discovery, as well as a memorandum of law, to demonstrate that the court

7

lacked jurisdiction. To support their response, the plaintiffs included more than 120 exhibits, likewise consisting of deposition transcripts, affidavits, interrogatory answers, and documentary evidence, as well as a memorandum of law, to demonstrate that Vision International had sufficient contacts with South Carolina and the United States generally. See S.C. Code Ann. § 36-2-803 (South Carolina's long-arm statute); Fed. R. Civ. P. 4(k)(2) (a so-called federal long-arm "statute"). The plaintiffs argued in their memorandum of law that both Vision International's CEO and its Legal Advisor had participated in the Ponzi scheme in South Carolina and California. The district court conducted a hearing on the motion on July 1, 2013, and neither side asked to present any further evidence, including any live testimony. Following the hearing, the district court granted Vision International's motion to dismiss, concluding that the plaintiffs had failed to meet their burden of proving, by a preponderance of the evidence, facts demonstrating personal jurisdiction over Vision International.

During the subsequent trial against Anderson, Kelley, and Total Eclipse, the district court granted the defendants' motion for judgment as a matter of law with respect to Grayson's and AMG Trust's claims for aiding and abetting fraud, reasoning that no such cause of action existed under South Carolina law. After

8

the district court dismissed the aiding and abetting claims, the jury found in favor of those defendants on the remaining claims.

On appeal, the plaintiffs challenge (1) the district court's procedure for dismissing their claims against Vision International for lack of personal jurisdiction, and (2) the district court's ruling dismissing the claims against Anderson, Kelley, and Total Eclipse for aiding and abetting common law fraud.

II

On the personal jurisdiction issue, the plaintiffs contend that the district court erred in granting Vision International's motion to dismiss because the court "did not conduct an evidentiary hearing to resolve the conflicting evidence." As a consequence, they argue, the district court erred in failing to recognize that, in that circumstance, they "only needed to make a prima facie showing to establish jurisdiction" and thus that their evidence had to be taken in the light most favorable to them. Rather than applying the prima facie standard, they argue, the district court "weighed and considered the evidence" and applied a more difficult standard, from the plaintiffs' point of view, by imposing on them the burden of proving facts demonstrating jurisdiction by a preponderance of the evidence. The plaintiffs maintain that only by applying the more rigorous

9

preponderance of the evidence standard was the district court able to grant Vision International's Rule 12(b)(2) motion to dismiss.

Vision International contends that the district court correctly held the plaintiffs to the preponderance of the evidence standard and, in applying that standard, correctly found that: (1) no evidence existed to show that Vision International availed itself of the privilege of conducting business in South Carolina; (2) no evidence existed to show that Vision International had any contacts with South Carolina or with the United States generally; and, more specifically, (3) no evidence existed to show that actions taken by two of Vision International's employees in furtherance of the loan scheme fell within the scope of their employment or were otherwise imputable to Vision International.

A

Addressing the plaintiffs' procedural arguments first, we note that the Federal Rules of Civil Procedure do not provide specific procedures for a district court's disposition of pretrial motions filed under Rule 12(b)(2). Nonetheless, the general principles governing an appropriate procedure are well-established.

Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). And a Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter. Id. ("[T]he jurisdictional question thus raised [under Rule 12(b)(2)] is one for the judge"). Indeed, only when a material jurisdictional fact is disputed and that fact overlaps with a fact that needs to be resolved on the merits by a jury might a court defer its legal ruling on personal jurisdiction to let the jury find the overlapping fact. Cf. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) (noting that, "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute," deferring resolution of that factual dispute to a proceeding on the merits "is the better view").

The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court. For example, when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge.

11

Combs, 886 F.2d at 676; see also Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993) (explaining how courts may consider affidavits from any party when applying the prima facie standard). When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff. See Combs, 886 F.2d at 676; Mylan Labs., 2 F.3d at 60. Ultimately, however, a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence. Combs, 886 F.2d at 676 (noting that "the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence"). And because defendants file Rule 12(b)(2) motions precisely because they believe that they lack any meaningful contacts with the forum State where the plaintiff has filed suit, the better course is for the district court to follow a procedure that allows it to dispose of the motion as a preliminary matter.

To be sure, we have previously stated that, if a court requires the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it must conduct an "evidentiary hearing." See, e.g., New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 n.5 (4th Cir. 2005) ("[P]laintiff[s] must eventually

12

prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing" (quoting Prod. Grp. Int'l v. Goldman, 337 F. Supp. 2d 788, 793 n.2 (E.D. Va. 2004) (internal quotation marks omitted))).  But contrary to the plaintiffs' position, an "evidentiary hearing" does not automatically involve or require live testimony.  See, e.g., Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 676 (1st Cir. 1992) (noting how, in the personal jurisdiction context, "[n]ot all 'evidentiary hearings,' . . . involve evidence 'taken orally in open court'" (quoting Fed. R. Civ. P. 43(a))); id. at 676-77 (noting that, to apply the preponderance of the evidence standard before trial, "a court may take most of the evidence . . . by affidavits, authenticated documents, answers to interrogatories or requests for admissions, and depositions"); see also Fed. R. Civ. P. 43(c) (providing that courts may "hear" motions "on affidavits or . . . wholly or partly on oral testimony or on depositions"). Rather, an "evidentiary hearing" requires only that the district court afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments. Once the court has provided that opportunity, it must hold the plaintiff to its burden of proving facts, by a preponderance of the evidence, that demonstrate the court's personal jurisdiction over the defendant.

As with many pretrial motions, a court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion. If the court deems it necessary or appropriate, or if the parties so request, it may conduct a hearing and receive, or not, live testimony. It may also consider jurisdictional evidence in the form of depositions, interrogatory answers, admissions, or other appropriate forms. But we see no reason to impose on a district court the hard and fast rule that it must automatically assemble attorneys and witnesses when doing so would ultimately serve no meaningful purpose. Creating such needless inefficiency would undermine a principal purpose of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

At bottom, a district court properly carries out its role of disposing of a pretrial motion under Rule 12(b)(2) by applying procedures that provide the parties with a fair opportunity to present to the court the relevant facts and their legal arguments before it rules on the motion.

In this case, Vision International filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction following the completion of a full discovery process. In support of its motion, it included numerous excerpts from depositions, exhibits, affidavits, and similar evidence for consideration by

14

the court.  Supporting their opposition to the motion, the plaintiffs filed over 120 exhibits, including deposition transcripts, affidavits, interrogatory answers, and documentary evidence.  Both sides also filed extensive memoranda of law. After the parties completed their submissions, the district court conducted a hearing on the motion on July 1, 2013, and, after receiving argument, took the motion under advisement.  At the hearing, no party proffered, nor did the court request, more evidence, and no party requested to present live testimony. Presumably, the parties and the court were satisfied that the court had before it all the relevant evidence from which to make its decision.  And, in this case, the evidence was substantial. Following this procedure, the district court found facts by a preponderance of the evidence and, based on those facts, concluded as a matter of law that it lacked personal jurisdiction over Vision International.

We find no deficiency in the process that was followed by the district court and conclude that the district court correctly applied the preponderance of the evidence standard, rather than the prima facie standard, in finding facts.  Because full discovery had been conducted and the relevant evidence on jurisdiction had been presented to the court, the court appropriately considered the evidence and found the facts by a preponderance of the evidence.  And even though a hearing was

15

not mandatory, the court also conducted one. No party ever claimed that the record was inadequately developed, that relevant evidence was missing, or that it was unable to fairly present its position. Accordingly, we find no error in the procedure that the district court followed or the standard that it applied for deciding Vision International's Rule 12(b)(2) motion.

B

On the merits of Vision International's Rule 12(b)(2) motion, the district court found that "there is no evidence that indicates that [Vision International's CEO Paul] Jarvis and [Vision International's Legal Advisor Ismini] Papacosta acted on Vision's behalf or in Vision's interest when they participated in the 90% Stock Loan Program." Moreover, it found that Vision International did not direct any of its activities to South Carolina, did not maintain any office or agent in South Carolina, did not own any property in South Carolina, and did not conduct any business with or communicate with anyone in South Carolina. At bottom, the court found that there was no evidence demonstrating that Vision International "purposefully availed itself of the privilege of conducting business in South Carolina" or that it had "any meaningful connection with the state." Accordingly, the court held that the plaintiffs failed

16

to carry their "burden of proving, by a preponderance of the evidence, [the grounds to demonstrate] that personal jurisdiction [was] proper over Vision" under South Carolina's long-arm statute, South Carolina Code § 36-2-803. It also held that the plaintiffs failed to carry their burden under Federal Rule of Civil Procedure 4(k)(2) of proving, by a preponderance of the evidence, that Vision International had sufficient contacts with the United States generally.

While the plaintiffs argue that the district court erred because the court did not construe the facts in favor of their position, harking back to the failure to apply the prima facie standard, they otherwise do not argue that the district court's factual findings were clearly erroneous or that its legal ruling on personal jurisdiction was erroneous. See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) ("We review de novo a dismissal for lack of personal jurisdiction, though we review any underlying factual findings for clear error" (citations omitted)).

We have already rejected the plaintiffs' procedural argument that the district court applied the wrong standard for finding facts and now we affirm the court's legal conclusion on the merits that it lacked personal jurisdiction over Vision International.

17

Establishing personal jurisdiction over Vision International under South Carolina's long-arm statute required, as a first step, that the plaintiffs prove that the defendant had "purposefully availed itself of the privilege of conducting activities in [South Carolina]." See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)); see also ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012) ("Because the scope of South Carolina's long-arm statute is coextensive with the Due Process Clause, we proceed directly to the constitutional analysis" (citations omitted)). The record in this case, however, includes no evidence to support a claim that the plaintiffs did so.

To be sure, two of Vision International's employees, CEO Jarvis and Legal Advisor Papacosta, conducted some business in relation to the loan scheme while employed by Vision International, including contacting businesses and individuals in South Carolina using Vision International's fax machines and email accounts. But none of the extensive discovery in this case yielded any evidence that the two were acting on Vision International's behalf or in Vision International's interest when doing so. Their actions, in other words, did not fall within the scope of their employment with Vision International,

18

which, as a company, was engaged in the business of distributing health and beauty products outside of the United States. See Young v. F.D.I.C., 103 F.3d 1180, 1190 (4th Cir. 1997) (applying South Carolina agency law in concluding that, "[i]f the employee acted for some independent purpose of his own," rather than "with the purpose of benefiting the employer," "the conduct falls outside the scope of his employment" and, thus, that a corporation cannot face vicarious liability for that employee's conduct). And insofar as no facts suggested that Jarvis and Papacosta acted within the scope of their employment, it follows that no dispute of fact could exist on that issue and that the district court correctly resolved this question of agency law in Vision International's favor. Because the plaintiffs relied entirely on the actions of these two employees to demonstrate jurisdiction, the court also concluded correctly that Vision International had not purposefully availed itself of the privilege of conducting business in South Carolina and that Vision International otherwise lacked any meaningful contacts with the State.

We also conclude that the district court did not err in rejecting the plaintiffs' reliance on their federal law claims to demonstrate personal jurisdiction over Vision International under Rule 4(k)(2). That Rule provides that, "[f]or a claim that arises under federal law, serving a summons or filing a

19

waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2) (emphasis added). Thus, if a plaintiff's claims arise under federal law, the plaintiff can invoke Rule 4(k)(2) if it demonstrates that no State can exercise personal jurisdiction over the defendant but that the defendant's contacts with the United States as a whole support the exercise of jurisdiction consistent with the Constitution and laws of the United States. See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 215 (4th Cir. 2002). Of course, if a plaintiff properly invokes Rule 4(k)(2), it can rely on pendent jurisdiction for its state law claims, so long as those claims arose under the same nucleus of operative facts. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 628 (4th Cir. 1997).

In this case, the plaintiffs never argued, as they were required to do, that no State could exercise personal jurisdiction over Vision International. See Fed. R. Civ. P. 4(k)(2)(A). In fact, the plaintiffs discuss only whether South Carolina could exercise jurisdiction over Vision International, without mentioning Vision International's status in other States. See Base Metal Trading, 283 F.3d at 215 ("Base Metal

20

has never attempted to argue that NKAZ is not subject to personal jurisdiction in any state. In fact, Base Metal continues to assert that personal jurisdiction over NKAZ is proper in Maryland as well as in other states"). In any event, the record shows that Jarvis' and Papacosta's personal contacts with businesses and individuals throughout the United States failed to establish jurisdiction under Rule 4(k)(2) <u>over Vision International</u> for the same reasons that those contacts proved insufficient to satisfy jurisdiction under South Carolina's long-arm statute. Their contacts involved conduct that exceeded the scope of their employment with Vision International and thus could not be imputed to Vision International.

Accordingly, we affirm the district court's ruling dismissing the claims against Vision International for lack of personal jurisdiction.

III

Plaintiffs Grayson and AMG Trust also contend that the district court erred in granting judgment as a matter of law to Anderson, Kelley, and Total Eclipse on state common law claims that those defendants had aided and abetted common law fraud. The plaintiffs argue that the district court erred in concluding that no such cause of action exists under South Carolina law because the South Carolina Supreme Court long ago recognized

21

this cause of action in Connelly v. State Co., 149 S.E. 266, 268 (S.C. 1929). We do not, however, read Connelly as the plaintiffs read it, and we have found no other case in which South Carolina has held that aiding and abetting common law fraud exists as a cause of action in the State.

In Connelly, the South Carolina Supreme Court held that, when a complaint charged two defendants jointly with the composition and publication of an allegedly libelous editorial, the defamation suit could be brought in the county of either defendant and therefore that the trial court did not err in refusing to transfer the case from the county of one defendant to the county of the other. 149 S.E. at 271. In affirming the trial court's refusal to transfer the action, the South Carolina Supreme Court said that it was "express[ing] no opinion as to the merit or demerit of the case, and no finding of the facts alleged." Id.

In claiming that Connelly recognizes a claim for aiding and abetting fraud, the plaintiffs point to language set forth in the trial court's opinion, which Connelly reprinted separately. That language quotes at length from a note in volume 1914C of the American Annotated Cases, which, in summarizing numerous cases from other States, stated, "[A]ll who aid, advise, countenance, or assist the commission of the tort are wrongdoers." Connelly, 149 S.E. at 268. But the trial court

22

did not adopt the language to formulate its holding, concluding only that, when two persons participate in the writing and publication of a libelous article, both are <u>jointly</u> liable and that a suit, therefore, could be brought in the county of either defendant.   <u>Id.</u> at 270.   Moreover, the language that the plaintiffs rely on was neither in the South Carolina Supreme Court's opinion nor was it approved by that court.   Indeed, in affirming the trial court's refusal to transfer the case, the South Carolina Supreme Court stated, "We simply hold that, under the showing made, <u>considered in the light of the law of this state governing such matters</u>, it was the duty of [the trial judge] to refuse the motion to transfer . . . ."   <u>Id.</u> at 271 (emphasis added).

The plaintiffs' assertion that <u>Connelly</u> constitutes "ample authority" to support a cause of action in South Carolina for aiding and abetting common law fraud borders on the frivolous.

To be sure, South Carolina courts have discussed aiding and abetting other specified conduct.  <u>See, e.g.</u>, <u>Future Grp., II v. Nationsbank</u>, 478 S.E.2d 45, 50 (S.C. 1996) (discussing "aiding and abetting a breach of fiduciary duty"); <u>Broadmoor Apartments of Charleston v. Horwitz</u>, 413 S.E.2d 9, 11 (S.C. 1991) (discussing aiding and abetting an "abuse of process").  But we have been unable to find any case that has held that aiding and

23

abetting common law fraud, or even torts generally, would constitute a cause of action in South Carolina.

As we have previously explained, "federal courts sitting in diversity rule upon state law <u>as it exists</u> and do not surmise or suggest its expansion." <u>Burris Chem., Inc. v. USX Corp.</u>, 10 F.3d 243, 247 (4th Cir. 1993) (emphasis added); <u>Guy v. Travenol Labs., Inc.</u>, 812 F.2d 911, 917 (4th Cir. 1987) ("In applying state law, federal courts have always found the road straighter and the going smoother when, instead of blazing new paths, they restrict their travels to the pavement"). In accordance with this well-established principle, we also decline any suggestion by the plaintiffs that we expand South Carolina law by recognizing a cause of action for aiding and abetting common law fraud.

We therefore affirm the district court's ruling to grant judgment as a matter of law to Anderson, Kelley, and Total Eclipse on the plaintiffs' claim that they aided and abetted common law fraud.

\* \* \*

The judgments of the district court are

<u>AFFIRMED</u>.