**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 17-2004**

SNEHA MEDIA & ENTERTAINMENT, LLC; NORD SINEW TECHNOLOGIES (I) PVT LTD.,

> Plaintiffs - Appellants,

v.

ASSOCIATED BROADCASTING COMPANY P LTD.,

> Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:16-cv-01386-LMB-MSN)

Argued: September 25, 2018                    Decided: December 18, 2018

Before NIEMEYER, DIAZ, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Diaz and Judge Floyd joined.

**ARGUED:** George A. Somerville, HARMAN CLAYTOR CORRIGAN & WELLMAN, P.C., Glen Allen, Virginia, for Appellants. Christopher Stephen Johns, JOHNS & COUNSEL, PLLC, Austin, Texas, for Appellee. **ON BRIEF:** Isak Howell, ISAK HOWELL LAW OFFICE, Roanoke, Virginia; Zev Kusin, JOHNS MARRS ELLIS & HODGE LLP, Austin, Texas, for Appellee.

NIEMEYER, Circuit Judge:

Sneha Media & Entertainment, LLC, a Virginia company, and Nord Sinew Technologies (I) PVT Ltd., an Indian company, commenced this action in the Eastern District of Virginia against Associated Broadcasting Company, another Indian company, for breach of contract and related causes of action arising from a dispute over the plaintiffs' right to distribute in the United States TV programming that Associated Broadcasting produced in India. Associated Broadcasting filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction in Virginia, and the district court granted the motion. Because Sneha and Nord failed to demonstrate that Associated Broadcasting had the minimum contacts with Virginia that are sufficient to satisfy the Due Process Clause, we affirm.

I

Associated Broadcasting is a news network in India that produces around-the-clock news and current affairs broadcasts on its TV9 channels for the Telugu, Kannada, and Gujarati speaking peoples in India. It claims to be one of the fastest-growing news networks in India. In 2009, it signed an agreement in India with Nord, granting Nord the exclusive right to distribute Associated Broadcasting's TV9 content anywhere outside India. In turn, Nord entered into an agreement with Sneha, granting it the right to distribute Associated Broadcasting's TV9 content in North America and Europe. Nord and Sneha are related insofar as Ramesh Annamreddy serves as the CEO of both companies.

2

In 2011, Associated Broadcasting and Nord signed an addendum to their agreement in which the parties recognized that Sneha would be distributing TV9 content in the United States and that Associated Broadcasting would not compete with Nord or Sneha but that they would "work together" to maximize returns under their original contract.

Several years later, Sneha entered into an agreement with DISH Network in the United States to deliver Associated Broadcasting's TV9 content over DISH's satellite network. When, however, Associated Broadcasting represented to DISH that it possessed the exclusive rights to TV9 content, Sneha and Nord commenced this action, alleging that Associated Broadcasting breached its distribution contract with Nord, interfered with Sneha's alleged contract with DISH Network, and violated Sneha and Nord's federal copyright interests in TV9 content.

Associated Broadcasting filed a motion to dismiss the complaint for lack of personal jurisdiction. The district court scheduled a hearing and, after the parties filed affidavits, exhibits, and memoranda of law relating to the motion, the court conducted the hearing, at which it granted the motion. The court concluded that the minimal contacts that Associated Broadcasting had with Virginia were not the type of "purposeful contacts with the forum that would allow the court to exercise jurisdiction over it."

Associated Broadcasting presented evidence that it entered into a contract only with Nord, that it did so in India, and that it did not have a contractual relationship with Sneha. It also presented evidence that it was incorporated in India with its principal place of business in Hyderabad, India, and that "all of [its] employees, officers, and directors

3

are based in its Indian offices." It also claimed that it maintains all of its records and business assets in India. It stated further:

> None of ABC's officers, directors, agents, or shareholders reside or carry out any business in Virginia. ABC does not have any offices or affiliates located in Virginia, nor does it have any employees or independent contractors on its payroll in Virginia. ABC has never owned, leased, or maintained any real property in Virginia, has no registered agent in Virginia, and is not registered with the Virginia Secretary of State to transact business in Virginia. ABC has no contracts with any Virginia resident or entity, pays no property or income taxes in Virginia, and has no directory listings, answering services, mailing addresses, servers, bank accounts, or telephone numbers in Virginia. To my knowledge, none of ABC's revenue derives from Virginia. To the extent ABC ever received payments from plaintiff Sneha, which is a Virginia resident, that is only because plaintiff Nord Sinew, which is an Indian company, assigned contract rights to Sneha . . . . In other words, ABC never took any affirmative steps to obtain business or payments from Sneha.

The CEO of Associated Broadcasting, V. Ravi Prakash, did state in his affidavit that between the years 2002 and 2011, he traveled to Virginia six or seven times to visit Ramesh Annamreddy, a longtime family friend who was also the CEO of both Sneha and Nord. He stated that those visits were primarily social. One, "at most," involved an informal and limited business discussion insofar as Ramesh Annamreddy stated that he "wanted to distribute [Associated Broadcasting] content in the United States." Prakash added, however, that the parties reached no arrangement during that discussion. The contract that Associated Broadcasting did execute was with Nord, and it was executed in India at a different time.

Sneha and Nord did not dispute these facts presented by Associated Broadcasting. They did present evidence, however, that when Associated Broadcasting sent TV9 reporters to the United States — but not to Virginia — Sneha provided them with

4

invitation letters to help them obtain visas to enter the United States. Similarly, Sneha and Nord stated that, pursuant to the addendum to Associated Broadcasting's contract with Nord, Sneha sponsored Associated Broadcasting's freelance reporters who were collecting information for TV9 in the United States, but again not in Virginia. The badges assigned to those reporters identified them as Associated Broadcasting TV9 personnel and included the address of Sneha in Virginia.

From the district court's order of dismissal dated August 4, 2017, Sneha and Nord filed this appeal.

II

Sneha and Nord contend at the outset that the district court determined personal jurisdiction on the motion papers without an evidentiary hearing and that therefore they should have only been required to make a *prima facie* showing of personal jurisdiction over Associated Broadcasting. The *prima facie* standard would entitle the plaintiffs to receive the benefit of having relevant allegations construed in the light most favorable to them, relieving them of the burden of demonstrating personal jurisdiction over Associated Broadcasting by a preponderance of the evidence. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). They contend that they have made a *prima facie* showing of personal jurisdiction and that the district court erred in dismissing the case.

To be sure, when the parties have not yet had a fair opportunity to develop and present the relevant jurisdictional evidence, we have treated the disposition of Rule 12(b)(2) motions to dismiss for a lack of personal jurisdiction in conceptually the same

5

manner as we treat the disposition of motions to dismiss under Rule 12(b)(6), where we take allegations of the complaint as true for purposes of assessing the motion to dismiss. Analogously, therefore, when considering a motion to dismiss under Rule 12(b)(2) at such a preliminary stage, even when the motion is accompanied by affidavits, we give the plaintiffs' allegations a favorable presumption, taking the allegations in the light most favorable to the plaintiff. *See Grayson*, 816 F.3d at 268. This approach allows a district court to decide the motion "as a preliminary matter" early in the proceeding. *Id*. Of course, if the court denies a Rule 12(b)(2) motion under the *prima facie* standard, it can later revisit the jurisdictional issue when a fuller record is presented because the plaintiff "bears the burden of demonstrating personal jurisdiction at every stage following [the defendant's jurisdictional] challenge." *Id*. at 267; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) ("[P]laintiff[s] must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing" (internal quotation marks and citation omitted)).

But when the parties develop the record before trial and the court conducts a hearing at which the parties are afforded a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments — *i.e.*, an "evidentiary hearing," *see Grayson*, 816 F.3d at 268 (defining a hearing as evidentiary when the court "afford[s] the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments") — the plaintiff must carry the burden to establish personal jurisdiction by a preponderance of the evidence, *id.* While such an evidentiary hearing should allow

6

the parties to present or argue factual evidence relevant to personal jurisdiction, it does not "automatically involve or require live testimony." *Id.* (emphasis omitted).

In this case, the district court scheduled a hearing to take place roughly two months after the motion was filed and established a schedule specifying when Sneha and Nord were to file their opposition to the motion and when Associated Broadcasting was to file its reply. During the two months, the parties did not pursue jurisdictional discovery, but they did develop the record beyond the initial motion. Associated Broadcasting's motion was accompanied by an affidavit and 6 exhibits; Sneha and Nord filed a response accompanied by an affidavit and 10 exhibits; and Associated Broadcasting then filed a reply, which included 3 more exhibits. Both parties also submitted memoranda arguing both the law and the facts. The parties then appeared at the motion hearing in open court on August 4, 2017, at which time they argued both the facts in evidence and the law. No party sought to present additional evidence to the court.

With this procedural course after the motion to dismiss was filed, the parties were given a fair opportunity to develop the record regarding personal jurisdiction, and in fact they did so. Although the court did not preclude jurisdictional discovery, the parties did not pursue any, opting instead to present their own evidence. The court conducted a hearing in open court, never restricting either party on what evidence to present, what facts to argue, and what law to present. As the architects of their presentation, the parties made their own determinations of what discovery to pursue and what evidence to gather to present to the court, and the court heard them on both the facts and the law. In

7

circumstances when, as here, the court does not preclude the parties from pursuing jurisdictional discovery, *cf. Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993), and holds a hearing at which the parties may present relevant evidence and legal arguments based on a developed record, plaintiffs will be held to the burden of establishing personal jurisdiction by a preponderance of the evidence.[*] Accordingly, we conclude that Sneha and Nord had the burden of establishing personal jurisdiction over Associated Broadcasting by a preponderance of the evidence.

III

To demonstrate personal jurisdiction over a defendant consistent with the Due Process Clause, a plaintiff must show (1) a State's *general* jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with the State, *see Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984); (2) a State's *specific* jurisdiction over the defendant by demonstrating that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); or (3) Rule 4(k)(2) jurisdiction by demonstrating that no State can exercise personal jurisdiction over the defendant and that

---

[*] We have also noted that, in circumstances when "full discovery ha[s] been conducted and the relevant evidence on jurisdiction ha[s] been presented to the court" — with no party claiming "that it was unable to fairly present its position" — the court has discretion to decide the Rule 12(b)(2) motion *without a hearing*, applying the preponderance of the evidence standard. *Grayson*, 816 F.3d at 269.

the defendant has sufficient contacts with the United States such that exercising jurisdiction over the defendant would be consistent with the U.S. Constitution and laws.

In this case, Sneha and Nord do not purport to demonstrate Virginia's general jurisdiction over Associated Broadcasting, but they do contend that they have demonstrated either specific jurisdiction or Rule 4(k)(2) jurisdiction. We address these contentions in turn.

A

To demonstrate the contacts necessary under the Due Process Clause for the district court to exercise personal jurisdiction over Associated Broadcasting, Sneha and Nord were required to demonstrate (1) that Associated Broadcasting purposefully availed itself of the privilege of conducting activities in Virginia; (2) that Sneha and Nord's claims arose out of the activities that Associated Broadcasting directed at Virginia; and (3) that the district court's exercise of personal jurisdiction over Associated Broadcasting would be constitutionally reasonable. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016) (citing *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)); *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). As we have noted, the defendant's contacts with the State "must have been so substantial that 'they amount to a surrogate for presence and thus render [Virginia's] exercise of sovereignty just.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277–78 (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997)).

In determining whether a defendant has purposely availed itself of the privilege of conducting business in a State, we have identified numerous nonexclusive factors to be considered, such as (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted. *See Consulting Eng'rs Corp.*, 561 F.3d at 278.

Sneha and Nord have not purported to present evidence relevant to most of these factors. We find the strongest support for their assertion of sufficient contacts in (1) a single meeting between Prakash, the CEO of Associated Broadcasting, and Annamreddy, the CEO of Sneha and Nord, and (2) the assistance that Sneha provided to Associated Broadcasting reporters.

As to the meeting in Virginia, Prakash, the CEO of Associated Broadcasting, stated in his affidavit:

> Between 2002 and 2011, I visited Virginia a total of six or seven times. To the best of my recollection, my last visit to Virginia was in 2011. The CEO of the plaintiff companies in this suit, Ramesh Annamreddy, is a longtime family friend. During my visits to Virginia between 2002 and 2011, I primarily went to his house for purely social visits. To the best of my recollection, I visited his office only three times between 2002 and 2011. Each of those visits was also primarily social and casual; one, at most,

10

involved business discussions, and those were informal. On one of those visits, I was accompanied by ABC's Chief Financial Officer. . . .

Ramesh Annamreddy is the only person I recall interacting with in Virginia regarding ABC's business with the plaintiffs. He wanted to distribute ABC content in the United States, and our limited business-related discussions in Virginia revolved around that topic.

Sneha and Nord did not contest this version of the facts nor did they add any additional facts about the meetings. In particular, they did not assert that the meeting led to any agreement or arrangement.

As to the assistance Sneha provided to employee reporters and freelance reporters, none of those reporters went to Virginia, and none were linked to the dispute giving rise to the complaint in this case. While those acts did involve Sneha's action emanating from Virginia in contacting the State Department on behalf of Associated Broadcasting reporters working elsewhere in the United States, those actions, even as they benefited Associated Broadcasting, were too removed from Sneha and Nord's claims based on the alleged breach of the contract between Associated Broadcasting and Nord. Sneha and Nord must show that Associated Broadcasting acted purposefully in Virginia such that it could expect to be haled into court there on a claim *arising out of its activity in Virginia*. *See Burger King*, 471 U.S. at 474; *Perdue Foods*, 814 F.3d at 189. Those actions therefore were not meaningful contacts for purposes of demonstrating specific jurisdiction.

At bottom, we conclude that these facts purportedly connecting Associated Broadcasting with Virginia are simply insufficient to satisfy due process requirements. Associated Broadcasting carries on its business solely in India, and, by a contract

11

executed in India, it gave Nord the right to distribute its TV9 programming elsewhere. The only relevant contact that Associated Broadcasting had with Virginia was a single meeting, which involved Annamreddy's expression of interest in distributing Associated Broadcasting TV9 content in the United States, and that discussion was informal and limited, leading to no arrangement.

Apart from the facts of record, counsel for Sneha and Nord stated at the hearing before the district court that Associated Broadcasting used "the Sneha media office [in Virginia] as its broadcast center and sent files back to India." This assertion, however, arose during the hearing and appears nowhere in the record, and it is not substantiated by any evidence. But even if we were to consider the statement, it does not advance the plaintiffs' effort to demonstrate sufficient contacts with Virginia. Plaintiffs do not explain which personnel were allegedly involved (if not reporters), what content was broadcast, or what files were transferred to India. Moreover, there is no suggestion of whether the asserted activity included the creation of any content. The use of the Sneha office to transmit files to India could at most, if assumptions are made, be a weak, insufficient contact, irrelevant to any claim asserted by Sneha or Nord.

Finally, Sneha and Nord argue that their position is supported by three Fourth Circuit decisions. In the first, *Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, we held that a defendant corporation had sufficient contacts to the forum where it had conducted "substantive deliberations" by email with a coconspirator working in the forum state to jointly conduct a "critical part" of the scheme that gave rise to the plaintiff's claims. 682 F.3d 292, 305–06 (4th Cir. 2012). Here,

12

although Associated Broadcasting has transacted business involving an associate working in the forum state, the nature of that business is far more attenuated and far more focused on India, where Associated Broadcasting operates. Associated Broadcasting's business relations to Virginia are more analogous to those in *Moncrief Oil International, Inc. v. OAO Gazprom*, where the Fifth Circuit found that a decision to contract with a resident of the forum state did not establish personal jurisdiction, even though the resident foreseeably performed many of its duties there, in part because the contract was centered outside the forum and did not require performance in the forum by the defendant. 481 F.3d 309, 312–13 (5th Cir. 2007).

In the second case relied on by plaintiffs, *Universal Leather, LLC v. Koro AR, S.A.*, we held that the district court erred in dismissing a civil action for failure to make a *prima facie* showing of personal jurisdiction. 773 F.3d 553, 556 (4th Cir. 2014). Given that the *prima facie* standard was applicable there, we accepted as true the plaintiff's allegations that the defendant's employees solicited purchases in the forum state, North Carolina, and exchanged "frequent e-mail correspondence" regarding over $5 million dollars of transactions. *Id*. at 560. While noting that in-person business meetings did not automatically confer personal jurisdiction, we explained that these meeting included "vigorous business solicitations undertaken by [the defendant] in North Carolina," which, when combined with "a two-year relationship between the parties that spanned a series of transactions and resulted in the sale of millions of dollars in goods," were sufficient to show purposeful availment of the privilege of conducting business in the State. *Id*. at 561. In reaching that conclusion, we placed special importance on "the fact that

13

defendant initiated contact with the plaintiff in the forum state and repeatedly reached into the forum state to transact business during in-person visits there." *Id*. at 562 (internal quotation marks and citation omitted).  We also noted that the defendant conducted at least six meetings with the plaintiff in North Carolina in pursuit of that business, *see id*., contacts with the forum far more intense and purposeful than those demonstrated in the case before us.

Finally, the plaintiffs cite *CFA Institute v. Institute of Chartered Financial Analysts of India*, in which we held that personal jurisdiction was proper over a defendant in Virginia where the defendant initiated contact with the plaintiff in Virginia and then repeatedly reached into Virginia to transact business.  551 F.3d 285, 287, 295 (4th Cir. 2009).  The parties engaged in 13 years of collaboration and correspondence that we found to constitute purposeful availment of the privilege of conducting business in the State.  *Id*. at 295.  Again, Sneha and Nord have not demonstrated such purposeful contacts by Associated Broadcasting with Virginia.

Accordingly, we conclude that Sneha and Nord have relied on contacts that are constitutionally insufficient to justify specific personal jurisdiction over Associated Broadcasting in Virginia, even if their burden were only to make a *prima facie* showing.

B

Sneha and Nord also contend that personal jurisdiction is justified under Federal Rule of Civil Procedure 4(k)(2).  That rule provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

14

> (A)    the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B)    exercising jurisdiction is consistent with the United States Constitution and laws.

The plaintiffs, however, have failed to demonstrate the first requirement of Rule 4(k)(2)(A) that Associated Broadcasting was not subject to jurisdiction in *any* State's courts of general jurisdiction. *See Grayson*, 816 F.3d at 271 (holding that Rule 4(k)(2) is available for jurisdiction if the plaintiff "demonstrates that *no State* can exercise personal jurisdiction over the defendant"). Accordingly, Rule 4(k)(2) cannot provide Sneha and Nord an alternative basis for personal jurisdiction over Associated Broadcasting.

*    *    *

For the reasons given, we affirm the district court's ruling dismissing the case.

AFFIRMED