**Patrick WECKESSER, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**KNIGHT ENTERPRISES S.E., LLC, Defendant.**

**Civil Action No. 2:16–cv–02053–RMG**

United States District Court, D. South Carolina, Charleston Division.

Signed January 7, 2017

Ashley Long Falls, Joseph Scott Falls, Falls Legal, Charleston, SC, for Plaintiff.

Debbie Whittle Durban, Matthew Adams Abee, Nelson Mullins Riley And Scarborough, Columbia, SC, for Defendant.

### Order

Richard Mark Gergel, United States District Court Judge

Plaintiff Patrick Weckesser works as cable installation technician for Defendant Knight Enterprises S.E., LLC, a limited liability company incorporated in South Carolina that does business in the southeast. Members of the putative class Plaintiff seeks to represent have also worked for Defendant in the past several years. Plaintiff has filed a complaint alleging that Defendant inappropriately classified him as an independent contractor instead of an employee and, as a result, denied him overtime and other wages he was entitled to in violation of the Fair Labor Standards Act ("FLSA") and the South Carolina Payment of Wages Act ("SCPWA"). (Dkt. No. 1 at 1–2.) This matter is before the Court on Defendant's motion to dismiss and compel arbitration. (Dkt. No. 6.) For the reasons set forth herein, the Court **DENIES** Defendant's motion to compel arbitration and **DENIES** Defendant's motion to dismiss.

## I. Facts

On September 11, 2015, Plaintiff and Defendant executed an Independent Contractor Services Agreement (the "Services Agreement"). (Dkt. No. 6–2.) Plaintiff signed the Services Agreement for himself, and Brian Vaughn signed the Services Agreement on behalf of Defendant. Brian Vaughn is the Director of Compliance and Risk Management for Defendant, Defendant's parent company (Jeffry Knight, Inc., based in Florida), and Jeffry Knight, Inc.'s other subsidiaries. (Dkt. No. 15–1 at 2.) On the same day, Plaintiff executed a separate Arbitration Rider and Class Action Waiver (the "Arbitration Agreement") with "Jeffry Knight, Inc. d/b/a/ Knight Enterprises." Jeffry Knight, Inc. is the only legal entity that appears on the Arbitration Agreement, both in the first paragraph of the Arbitration Agreement and under the signature line at the end. (Dkt. No. 6–3.) Defendant's name ("Knight Enterprises S.E., LLC") does not appear anywhere in the Arbitration Agreement.[1] Brian Vaughn signed the Arbitration Agreement on behalf of Jeffry Knight, Inc.[2]

---

1. There is another entity registered to do business in South Carolina called "Knight Enterprises, LLC" that is separate and distinct from Defendant.

2. Brian Vaughn submitted an affidavit stating that he signed both agreements in his capacity as Director of Compliance and Risk Management for Defendant (Knight Enterprises S.E., LLC). (Dkt. No. 15–1 at 2.) Mr. Vaughn wears many hats as Director of Risk and Compliance for Jeffry Knight, Inc. and all of its subsidiaries. His personal state of mind is not dispositive here.

## II. Legal Standard

### a. Motion to Compel Arbitration

 The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable and enforceable" unless there are grounds for revocation in law or equity. 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765. A litigant can compel arbitration under the FAA if the litigant can demonstrate: " '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction ... to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.' " *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (*quoting Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)). If a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500 (4th Cir. 2002). Whether the parties agreed to arbitrate a particular dispute is a question of state law governing contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

### b. Motion to Dismiss or Stay Proceedings

 The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration, and "[t]his stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500; *see also* 9 U.S.C. § 3. But the Fourth Circuit has also held that if all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is "an appropriate remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). The Fourth Circuit has acknowledged the inconsistency between its opinions on this issue. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) ("There may be some tension between our decision ... indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'— and *Choice Hotels*—sanctioning dismissal 'when all of the issues presented ... are arbitrable.' "). At present, in this Circuit a district court *must* stay an action pending arbitration of any arbitrable claims, with the exception that it *may* instead dismiss an action if all claims asserted are arbitrable.

## III. Discussion

### a. Existence of a Valid Arbitration Agreement

 Defendant has moved to compel arbitration in this case, and Plaintiff and Defendant dispute whether the two parties have executed a valid arbitration agreement that Defendant can rely on to compel arbitration.[3] Plaintiff argues simply that he executed the Arbitration Agreement with "Jeffry Knight Inc. d/b/a Knight Enterprises" (Defendant's parent company) but has not entered any arbitration agreement with the Defendant (Knight Enterprises

---

**3.** This Court finds that Plaintiff and Defendant did not enter a valid arbitration agreement so will not determine whether the arbitration agreement may be unenforceable as a matter of law because its ban on any form of collective action violates the National Labor Relations Act (NLRA). That issue is currently pending before the Fourth Circuit Court of Appeals; oral argument was held in December 2016. *AT&T Mobility Servs. v. NLRB*, No. 16–1099, 16–1159.

S.E., LLC). Defendant argues that a mere clerical error caused "S.E., LLC" to be omitted from Defendant's name in the Arbitration Agreement, which should not invalidate the agreement. (Dkt. No 15–1 at 2.)

When the parties dispute whether a valid arbitration agreement exists, any ambiguities must be resolved *against the drafter*—which, in the labor context, will always be against the employer and in favor of the employee.[4] *Kristian v. Comcast Corp.*, 446 F.3d 25, 35 (1st Cir. 2006). While there is a presumption in favor of arbitration, this presumption disappears when the parties dispute the *existence* of a valid arbitration agreement. *See Am. Heritage Life Ins. v. Lang*, 321 F.3d 533, 537–38 (5th Cir. 2003); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

Defendant has urged this court not to overlook two key principles of contract interpretation under South Carolina law. The first principal is that a misnomer does not invalidate an agreement. Defendant is correct that a simple misnomer or misspelling does not necessarily invalidate an agreement, but, to support this proposition, Defendant relies on a case in which the court determined that it could construe the misnomer to mean the name of the corporation because the name actually listed was *not even a legal entity*. *Cobb & Seal Shoe Store v. Aetna Ins. Co.*, 78 S.C. 388, 58 S.E. 1099, 1099 (1907) ("Evidence that there was no such legal entity as Cobb & Seals, and that the defendant's agent, before issuing the policy, knew the property was owned by the corporation, Cobb & Seal Shoe Store, tended strongly to show the failure to use the true corporate name in the policy was a mere inadvertence, and that "Cobb & Seals," in the contract, meant the corporation."). The entity listed on the Arbitration Agreement in this case, "Jeffry Knight, Inc.," *is* a legal entity—it is, in fact, Defendant's Florida-based parent company.

Defendant relies on a second case in which the South Carolina Court of Appeals held that "an insurer shall not be permitted to avoid liability on an insurance policy because of an incorrect naming of the insured." *S.C. Ins. Co. v. Price*, 315 S.C. 212, 432 S.E.2d 508, 508 (App. 1993). In *Price*, the South Carolina Insurance Company (SCIC) issued a policy in the name of one of three siblings who owned a building together in a partnership. When the building burned down, SCIC claimed it was only responsible for one-third of the value of the building since only one brother was listed on the policy. The Court of Appeals held that SCIC could not avoid liability when it had "received full premiums [that were] paid on the partnership's account." *Id.* at 509. The holding in *Price* does not advance Defendant's argument. First, Plaintiff does not seek to avoid liability for anything by pursuing its FLSA claims in federal court. Second, and a point the Court will address in more detail below, Plaintiff has not received any benefit from the Arbitration Agreement analogous to the insurance premiums SCIC received in *Price*.

The second principal of contract interpretation in South Carolina that Defendant has raised is the rule that "where instruments are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, the courts will consider and construe the instruments together." *Klutts Resort Realty, Inc. v. Down'Round Dev. Corp.*, 268 S.C. 80, 232 S.E.2d 20, 24 (1977). The Arbitration Agreement in this case was

---

4. This Court takes no position on Plaintiff's substantive claim that he was misclassified as an independent contractor.

executed at the same time and in the course of the same transaction as the Services Agreement. As established above, however, the Arbitration Agreement was not executed by the same parties. The Arbitration Agreement and the Services Agreement also do not have the same purpose. The Services Agreement outlines the nature and scope of the work Plaintiff would perform in exchange for compensation. The Arbitration Agreement is a separate contract with the sole purpose of laying out the contours of dispute resolution. Courts have found that contracts have the same purpose when, for example, both provide for compensation for a project. *Sentry Eng'g & Const., Inc. v. Mariner's Cay Dev. Corp.*, 287 S.C. 346, 338 S.E.2d 631, 633–34 (1985) (Construing contracts together when "[t]he two documents refer to different components of the contract's price term: payment for actual work and payment for profit. Under the *Klutts* test, the purpose of both is the same: *compensation for project construction.*"). Even if the Arbitration Agreement and Services Agreement together met the same time/parties/purpose/transaction test articulated in *Klutts*, "construing" the two agreements together would not necessarily lead this Court to find that Defendant was a signatory to the Arbitration Agreement. *Klutts*, 232 S.E.2d at 24 ("Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect between the parties so that the whole agreement as actually made may be effectuated."),

**b. Equitable Estoppel**

In the event this Court finds, as it has, that no valid arbitration existed between the parties, Defendant seeks to compel arbitration through two doctrines of state common law: 1) equitable estoppel, or 2) third-party beneficiary status.

■ In the Fourth Circuit, courts can apply the doctrine of equitable estoppel to allow a nonsignatory of an arbitration agreement to compel arbitration with a signatory in two situations: When a signatory to the agreement with the arbitration clause 1) "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory" or 2) "raises allegations of ... substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). The Court will not compel plaintiff to arbitrate under part (1) or part (2)[5] of the doctrine of equitable estoppel.

■ Defendant says that Plaintiff has relied on the Services Agreement and the Arbitration Agreement to assert his FLSA and SCPWA claims. This is not the case. If the Arbitration Agreement was incorporated into the Services Agreement in its own clause, the Court would have to determine whether Plaintiff relied on the Services Agreement to bring his wage claims. The Arbitration Agreement here is a separate contract. It does not matter if Plaintiff has relied on the terms of the Services Agreement to make his claim because Plaintiff has not in any way relied on provisions of the Arbitration Agreement in his complaint.

**5.** Plaintiff has not raised allegations of concerted misconduct by both Defendant (the non-signatory) and its parent company, Jeffry Knight, Inc. (the signatory). Plaintiff's claims are based entirely on the actions of Defendant, and Defendant has not argued otherwise. Defendant has not made a case for equitable estoppel under (2), and the Court finds it is not applicable here.

Defendant directs the court to the South Carolina Court of Appeals's holding in *Pearson v. Hilton Head*, 400 S.C. 281, 733 S.E.2d 597, 601–605 (App. 2012) ("a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him"). In *Pearson*, the Court of Appeals applied the doctrine of equitable estoppel to compel arbitration when a hospital that was not a signatory to the arbitration agreement between a doctor and placement provider could compel arbitration with the doctor because 1) the doctor had obtained a benefit from the contract that contained the arbitration clause and 2) the doctor's wage claims were based on that contract. Plaintiff's claims in this case do not depend on any provision of the Arbitration Agreement as was the case in *Pearson* because the Arbitration Agreement was entirely separate from the Services Agreement.

Benefits Plaintiff may have received from the Services Agreement are irrelevant here. Defendant must argue, and does in its Reply, that Plaintiff received some benefit from the Arbitration Agreement that would make it appropriate for the Court to apply the doctrine of equitable estoppel and compel Plaintiff to arbitrate his wage claims. Defendant contends that Plaintiff received benefits from the Arbitration Agreement because "The Arbitration Rider provides both parties an efficient and cost-effective method for resolving disputes that may arise during Plaintiff's work as a cable technician. Plaintiff and Knight receive a direct benefit from both the Contract and the Arbitration Rider." (Dkt. No. 15 at 7.)

The South Carolina Court of Appeals recently addressed whether a party can be compelled to arbitrate under the doctrine of equitable estoppel based solely on the benefits he received from being party to an arbitration agreement or clause:

Notably, **in those opinions addressing equitable estoppel in the arbitration context, the nonsignatory's contractual benefit is not typically an alleged benefit of arbitration** such as "avoiding the expense and delay of extended court proceedings" or being "capable of enforcing the [arbitration agreement]," as touted by Appellants in the present case—rather, the contractual benefit typically arises from another provision of the same contract that includes the arbitration provision. *See Pearson,* 400 S.C. at 296–97, 733 S.E.2d at 605 (ability to work at the defendant's hospital facility and receive payment for work); *see also Int'l Paper Co.[ v. Schwabedissen Maschinen & Anlagen GMBH]*, 206 F.3d [411] at 418 [ (4th Cir. 2000) ] (warranty provisions); *Jackson[ v. Iris.com]*, 524 F.Supp.2d [742] at 750 [ (E.D. Va. 2007) ] (entitlement to retain a $150,000 payment pursuant to the contract's liquidated damages provision); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (lower insurance rates on a yacht and the ability to sail under the French flag); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (continuing use of a name).

*Thompson v. Pruitt Corp.*, 416 S.C. 43, 784 S.E.2d 679, 688 (App. 2016), *reh'g denied* (Apr. 21, 2016), *cert. denied* (Dec. 2, 2016) (emphasis added).

The *Pruitt* court was of course referring to a non-signatory's potential contractual benefits while Defendant, the non-signatory here, seeks to compel Plaintiff, a signatory, to arbitrate based on the benefits Plaintiff received from being a party to the arbitration agreement. Non-signatories and signatories are treated differently by

the courts with regard to many issues in arbitration-related disputes, and it is not always appropriate to assume a holding would apply to them interchangeably. The Court finds it is appropriate, however, in this context, to decline to recognize the Plaintiff signatory's alleged benefits of simply being party to an arbitration agreement as sufficient grounds to justify applying the doctrine of equitable estoppel to compel Plaintiff to arbitrate. Moreover, it is not at all clear that Plaintiff even had the benefit of the ability to force Defendant to arbitrate since Defendant does not appear on the Arbitration Agreement. In fact, as courts are generally more reluctant to compel non-signatories to arbitrate than to compel signatories to do so, it is unlikely that Plaintiff would have had success relying on <u>this</u> Arbitration Agreement to compel Defendant to arbitrate.

### c. Third–Party Beneficiary

■ Finally, Defendant argues that it should be able to compel arbitration as a third-party beneficiary to the Arbitration Agreement. Defendant claims that both it and Plaintiff intended at the time they entered the contract to benefit from "an efficient and cost-effective method for resolving disputes that may arise during Plaintiff's work as a cable technician." (Dkt. No. 15 at 7.)

The District Court in the Middle District of North Carolina recently compelled arbitration in a case similar but distinguishable from this one. In *Barber v. Charlotte Motor Speedway, LLC*, plaintiff brought age and disability discrimination claims against his former employer (Charlotte Motor Speedway) in North Carolina state court, and the defendant removed the case to federal court. No. 1:13CV99, 2014 WL 6686730, at *1 (M.D.N.C. Nov. 26, 2014). As is the case here, the plaintiff in *Barber* had signed a binding arbitration agreement when he started his employment with Charlotte Motor Speedway but

executed that agreement with his employer's parent company. Charlotte Motor Speedway moved to compel arbitration and the plaintiff objected that he executed the arbitration agreement with his employer's parent company, not his employer. The *Barber* court found that "a valid arbitration agreement exists between SMI and Plaintiff which Defendant CMS may enforce against Plaintiff under state law contract principles, based on the explicit inclusion of SMI's affiliates in the contract provisions, as well as the clear intent to benefit and include CMS as an intended third-party beneficiary." *Id.* at *4. The *Barber* court relied primarily on the fact that the arbitration agreement expressly included affiliates of the parent corporation (and affiliates, by definition, would include the parent company). The Arbitration Agreement that Patrick Weckesser signed does not include any reference to affiliates of Jeffry Knight.

The District Court in the District of South Carolina denied a non-signatory employer's attempts to compel arbitration. *Huffman v. Sticky Fingers, Inc.*, No. CIV.A. 2:052108DCNGC, 2006 WL 895029, at *1 (D.S.C. Mar. 31, 2006). In *Huffman v. Sticky Fingers*, the plaintiff pursued a Title VII employment claim, and the defendant moved to compel arbitration. When the plaintiff applied to work with Sticky Fingers, she was required, as a condition of employment, to sign an arbitration contract with a separate entity called Employment Dispute Services, Inc. In that case, the arbitration agreement explicitly stated that Sticky Fingers was the "third party beneficiary" of the contract and that a third-party beneficiary "benefits legally from a contract between two parties" *Id.* at *6 (internal quotation marks omitted). Nonetheless, that District Court refused to compel the plaintiff to arbitrate because the arbitration agreement did not specifically identify which company was meant to receive the third-

party benefit that was contemplated. Instead, the agreement stated that the "Company and any other successor or assign, its signatory superiors, managers and other agents" would be third-party beneficiaries of the agreement. *Id.* Following the District Court in *Huffman v. Sticky Fingers*, this Court decline to compel Plaintiff to arbitrate under the third-party beneficiary doctrine because the Arbitration Agreement does not "expressly identify" Defendant as a third-party beneficiary.[6] "As between the parties, plaintiff should not have to suffer the consequences of the Agreements' ambiguities." *Id.* at *6.

## IV. Conclusion

For the reasons above, the Court **DENIES** Defendant's motion to compel arbitration and **DENIES** Defendant's motion to dismiss.

**AND IT IS SO ORDERED.**

---

**6.** Defendant is correct that the Arbitration Agreement states that it is "in addition to the terms of the Independent Contractor Services Agreement between the parties." (Dkt. No. 6–3 at 2.) The Court could interpret "between the parties" to mean that the Arbitration Agreement was meant to benefit Defendant as a party to the Services Agreement. The Court finds that these three words do not suffice to establish that Defendant was intended to be a third-party beneficiary of the Arbitration Agreement.