**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1247

PATRICK WECKESSER, on behalf of himself and all others similarly situated,

Plaintiff − Appellee,

v.

KNIGHT ENTERPRISES S.E., LLC,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Richard Mark Gergel, District Judge. (2:16-cv-02053-RMG)

Argued: March 20, 2018                    Decided: June 12, 2018

Before MOTZ, TRAXLER, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Motz and Judge Traxler joined.

**ARGUED:** Deborah Whittle Durban, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellant. Joseph Scott Falls, FALLS LEGAL, LLC, Charleston, South Carolina, for Appellee. **ON BRIEF:** Matthew A. Abee, NELSON MULLINS RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellant. Ashley Long Falls, FALLS LEGAL, LLC, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Patrick Weckesser sued Knight Enterprises S.E., LLC ("Knight Enterprises") in federal district court for various employment-related claims. According to Knight Enterprises, Weckesser signed a contract that requires him to arbitrate this dispute. So Knight Enterprises asked the court to dismiss or stay Weckesser's federal case and to order the parties to submit to arbitration. But as the district court correctly explained, the parties never entered into a valid agreement to arbitrate. This case must be heard in a court.

I.

Jeffry Knight, Inc. ("Jeffry Knight"), a Florida corporation, is the parent company of Knight Enterprises, which provides customers with high-speed cable, television, and telephone installation services. Patrick Weckesser worked as a service technician for Knight Enterprises.

Weckesser's joust with Knight Enterprises began when he sued the company in federal court in South Carolina. Weckesser claims that he and other technicians were improperly categorized as independent contractors rather than employees and are therefore owed overtime pay, back pay for unpaid wages, and treble damages under the Fair Labor Standards Act, 29 U.S.C. § 207, and the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10. Weckesser seeks to represent himself as well as other similarly situated current and former service technicians in a class action.

This appeal confronts not the substance of Weckesser's claims, but rather where they should be resolved. Knight Enterprises asked the district court to compel arbitration

2

based on paperwork Weckesser signed when he began to work for the company. One document, styled as an "Independent Contractor Services Agreement" (the "Services Agreement"), sets forth the terms (some in capitalized text) governing Weckesser's work for Knight Enterprises. J.A. 23–25. It also provides that the agreement, "together with its related written documents, contains the entire understanding between the parties with respect to the matters set forth herein." J.A. 25. The Services Agreement itself contains no reference to arbitration. It does, however, provide that the parties "knowingly and intentionally waive their right to a trial by jury in order to expedite the handling of any dispute hereunder." *Id.* The Services Agreement is dated September 11, 2015, and signed by Patrick Weckesser, on behalf of himself, and Brian Vaughn, on behalf of Knight Enterprises.

Weckesser and Vaughn signed another document called an "Arbitration Rider and Class Action Waiver" (the "Arbitration Rider"). J.A. 27–28. The Arbitration Rider provides that any dispute between the parties must be "referred to and finally resolved by arbitration in Tampa, Florida." J.A. 27. It also includes a class action waiver, requiring that any claim "be brought in the respective party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar proceeding." J.A. 28. The Arbitration Rider explains (in all-capitalized text):

> The parties understand that they may have had a right to litigate th[r]ough a court, to have a judge or jury decide their case and to be a party to a class or representative action. However, they understand, agree, and choose to waive such rights and to have any claims decided individually, through arbitration as provided herein. Each party voluntarily and irrevocably waives any and

3

all rights to have any dispute heard or resolved in any forum other than through arbitration as provided herein. This waiver includes, but is not limited to, any right to a trial by jury.

*Id.* Like the Services Agreement, the Arbitration Rider is dated September 11, 2015, and was signed by Weckesser and Vaughn. But this time, the document identified Vaughn as signing not on behalf of Knight Enterprises, but on behalf of its parent company, "Jeffry Knight, Inc. d/b/a/ Knight Enterprises." *Id.* And the opening sentence of the Arbitration Rider states that the agreement was "entered into by and between Jeffry Knight, Inc. d/b/a Knight Enterprises . . . and the undersigned Independent Contractor." J.A. 27.

Knight Enterprises asked the district court to stay or dismiss the proceedings and to compel arbitration based on the Services Agreement and the Arbitration Rider. Its argument was threefold: first, the identification of Jeffry Knight rather than Knight Enterprises in the Arbitration Rider was a clerical error that had no effect on the force of the agreement; second, and in the alternative, Knight Enterprises was entitled to enforce the arbitration agreement between Weckesser and Jeffry Knight as a third-party beneficiary; and third, in any event, the court should use its powers in equity to force the parties to arbitrate. The district court rejected each of these contentions and denied the motion. Knight Enterprises appealed.[1]

II.

---

[1] The Federal Arbitration Act permits a party to take an interlocutory appeal as of right from an order "refusing a stay of any action" where a party contends that an agreement to arbitrate applies. 9 U.S.C. § 16(a)(1)(A).

4

We review de novo a district court's decision not to compel arbitration. *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 453 (4th Cir. 2017). We review the court's refusal to impose equitable estoppel for an abuse of discretion. *Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006).

A.

Arbitration is "a matter of contract," and courts "must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (internal quotation marks omitted, citation, and alterations omitted). Section 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 2, "creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts to place such agreements upon the same footing as other contracts." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (internal quotation marks omitted).

Although the Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," a court cannot force a party to arbitrate a claim unless that party has agreed to do so. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). And the FAA doesn't "purport[] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen*, 556

5

U.S. at 630. Thus, to determine whether the Arbitration Rider created an enforceable agreement between Weckesser and Knight Enterprises, we look to principles of South Carolina contract law.

Under South Carolina law, courts must, to whatever extent possible, enforce a contract as written. A court "has no authority to rewrite a contract and impose unwanted obligations and terms under the guise of specific performance or judicial construction." *Lowcountry Open Land Tr. v. Charleston Southern Univ.*, 656 S.E.2d 775, 781 (S.C. 2008); *see also Lewis v. Premium Inv. Corp.*, 568 S.E.2d 361, 363 (S.C. 2002) ("It is not the function of the court to rewrite contracts for parties."). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language . . . . If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Schulmeyer v. State Farm Fire and Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003).

On its face, the Arbitration Rider plainly appears to be an agreement between Weckesser and Jeffry Knight. It says as much in its opening sentence, and it purports to be signed by an agent of Jeffry Knight. Nevertheless, we're asked to find that the references to Jeffry Knight (rather than Knight Enterprises) in the Arbitration Rider were, as Knight Enterprises puts it, a "clerical error," a "simple misnomer," or "merely a scrivener's error," rather than an accurate identification of the parties to the agreement.

To justify this interpretation, Knight Enterprises points us to *Cobb & Seal Shoe Store v. Aetna Ins. Co.*, 58 S.E. 1099 (S.C. 1907). In that case, the Supreme Court of South Carolina enforced a policy insuring the Cobb & Seal Shoe Store (which also did business

6

as simply "Cobb & Seal") despite the fact that the policy identified "Cobb & Seals" (with an errant terminal "s") as the insured. *Id.* at 1099. In enforcing the agreement, the court explained that a contract "is good between the parties, no matter how incorrect the names used in the paper may be, if it appears they were intended as the names of the parties to be bound by the contract or to receive its benefits." *Id.*

But that case is distinguishable. There, the court had evidence "that there was no such legal entity as Cobb & Seals, and that the defendant's agent, before issuing the policy, knew the property was owned by the corporation, Cobb & Seal Shoe Store." *Id.* By contrast, Jeffry Knight is an actual legal entity. And that entity is no stranger to Patrick Weckesser—it's the parent company of Knight Enterprises, for whom he worked. It strains reason to imagine that Cobb & Seal would pay to insure a nonexistent entity with no relation to its store, all the while forgoing its own coverage. But it's far easier to believe that Jeffry Knight might (for example) require employees of its subsidiaries to sign an arbitration waiver to cabin its own liability. For this reason alone, it's much more plausible than in *Cobb & Seal* that the parties intended what the writing stated: that the Arbitration Rider applied to disputes between Weckesser and Jeffry Knight, and not to disputes with its subsidiary.

Other textual clues support this interpretation. For example, while the mistake in *Cobb & Seal* involved only the addition of an accidental "s," "Jeffry Knight, Inc." bears little typographical semblance to "Knight Enterprises S.E., LLC." Additionally, the Arbitration Rider sets dispute resolution in Jeffry Knight's backyard: it selects Tampa, Florida (where Jeffry Knight is based) as the venue for arbitration and the source of

7

applicable substantive law. Knight Enterprises, on the other hand, is at home in South Carolina. Finally, the Services Agreement already contains a provision that governs dispute resolution between Weckesser and Knight Enterprises—it states that the parties waive their right to a jury trial. The interpretation offered by Knight Enterprises would scatter its dispute resolution terms among separate documents. While not mutually exclusive with the substance of the Arbitration Rider, this evidence is consistent with the formation of two distinct agreements: one to resolve disputes between Weckesser and Knight Enterprises by bench trial, and another committing claims between Weckesser and Jeffry Knight to arbitration.

Against this evidence, there's little in the text of the agreements to suggest we shouldn't hold the parties to their words. The best evidence for Knight Enterprises is the statement in the Arbitration Rider that it is "in addition to the terms of the [Services Agreement] between the parties." J.A. 27. But while we recognize that "between the parties" might suggest that the parties to the Services Agreement and the Arbitration Rider ought to be the same, this solitary statement isn't enough to overcome the evidence that points the other way. Just as it could be a clerical error that the Arbitration Rider identified Jeffry Knight instead of Knight Enterprises, it could also be a mistake that the agreement included the "between the parties" language.[2]

---

[2] The Arbitration Rider also states that one of its signatories is Jeffry Knight "d/b/a" (doing business as) Knight Enterprises. The use of a fictitious (or trade) name doesn't bind to the contract an entity in another state whose legal name is similar to the fictitious name. In fact, the use of a fictitious name here actually favors Weckesser, because it demonstrates

At best, this phrase injects some ambiguity into the agreement. And ambiguity alone can't ride to the rescue of Knight Enterprises. Nothing in the record suggests that Weckesser helped to draft either the Services Agreement or the Arbitration Rider, nor did he negotiate any of their terms. To the contrary, they appear to be form contracts of adhesion. And to the extent the agreements are ambiguous, the "basic contract law principle *contra proferentem* counsels that we construe any ambiguities in the contract against its draftsman." *Maersk Line, Ltd. v. United States*, 513 F.3d 418, 423 (4th Cir 2008); *see also Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 778 (S.C. 2010) ("[E]ven if the language creates an ambiguity, a court will construe any doubts and ambiguities in an agreement against the drafter of the agreement.").

Knight Enterprises argues that in the special context of arbitration agreements, a feather must be placed upon the scale on the side of arbitrating claims. To be sure, courts have spoken of a "general policy-based, federal presumption in favor of arbitration." *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012). But that presumption is no armor for Knight Enterprises here. The presumption can't "override[] the principle that a court may submit to arbitration only those disputes the parties have agreed to submit." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013) (internal quotation marks and ellipses omitted).

---

the drafter of the contract deliberately identified the party as Jeffry Knight doing business under its trade name, and not Knight Enterprises itself.

9

This case asks the question "who must arbitrate" rather than "what must be arbitrated." And the presumption applies "only when a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand, not when there remains a question as to whether an agreement [to arbitrate] even exists between the parties in the first place." *Id.* (internal quotation marks omitted); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (courts should "apply[] the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand"); *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 324 n.2 (4th Cir. 2013) (arbitration presumption "applies only where a validly formed and enforceable arbitration agreement exists and its scope is ambiguous"); *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (presumption "does not apply to disputes concerning whether an agreement to arbitrate has been made").

The parties here must abide by what the agreement says. The Arbitration Rider binds Weckesser and Jeffry Knight to arbitration of their disputes and is silent as to claims arising between Weckesser and Knight Enterprises. However "healthy" the federal regard for arbitration, we won't force one party to arbitrate a claim with another when he hasn't agreed to do so. *See Moses H. Cone Mem'l Hosp. v. Mecury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under principles of South Carolina contract law, we conclude that Knight

10

Enterprises wasn't a party to the Arbitration Rider, and on that basis the agreement isn't sufficient to compel arbitration of this case.[3]

B.

Knight Enterprises next argues that even if it wasn't a party to the arbitration agreement, it should nevertheless be considered a third-party beneficiary of that contract and thereby receive its benefits.

A third-party beneficiary "is a party that the contracting parties intend to directly benefit." *Helms Realty, Inc. v. Gibson-Wall Co.*, 611 S.E.2d 485, 488 (S.C. 2005). "In order to determine whether the parties intended [a person] to be a third-party beneficiary, we must look within the four corners" of the agreement. *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 164 (4th Cir. 2004) (internal quotation marks omitted) (applying South Carolina law); *see also Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005). While we agree with Knight Enterprises that a contract need not always identify a third-party beneficiary by name,[4] South Carolina law requires that a

---

[3] Knight Enterprises also asks us to find that the Arbitration Rider was incorporated by reference into the Services Agreement. But that argument misses the mark. It may be that the Services Agreement between Weckesser and Knight Enterprises was premised or preconditioned upon Weckesser entering into the Arbitration Rider with Jeffry Knight. But incorporating the Arbitration Rider into the Services Agreement doesn't change the identity of the parties to each contract.

[4] Circumstances where an unnamed third party may assert a contractual right often invoke some public policy interest. *See, e.g.*, *Sloan Constr. Co. v. Southco Grassing, Inc.*, 659 S.E.2d 158, 164–65 (S.C. 2008) (finding subcontractor to be third-party beneficiary to contract between general contractor and government where claim asserted involved "important public interests" affecting "efficient use of tax dollars and other sources of public funding"); *Johnson v. Am. Ry. Express Co.*, 161 S.E. 473, 476 (S.C. 1931)

11

contract make clear on its face the parties' intent that the agreement benefit another. "No third-party beneficiary status is created absent an intent by the parties to confer a substantial benefit . . . ." *Windsor Green Owners Ass'n v. Allied Signal, Inc.*, 605 S.E.2d 750, 753 (S.C. Ct. App. 2004).

As we've explained, the parties to the Arbitration Rider are Patrick Weckesser and Jeffry Knight. And we see nothing in the text of the Arbitration Rider evincing an intent to create a right enforceable by Knight Enterprises. In fact, Knight Enterprises appears to receive no benefit at all from the contract. And although Knight Enterprises asks us to look to the "essential purpose" of the Arbitration Rider, the purpose of the agreement is plain on its face: the document imposes mutual restrictions (individual arbitration, as well as venue and choice-of-law selection) on the resolution of disputes between Weckesser and Jeffry Knight. Knight Enterprises asks us to read the agreement to embrace arbitration not only between the parties, but also for disputes with an entity absent from the contract. To do so would be too great a logical leap. The text of the Arbitration Rider doesn't show a clear intent to make Knight Enterprises a third-party beneficiary, and we decline to rewrite the contract to say otherwise.

---

(permitting union member to enforce contract between union and employer, noting public interest in "a friendly spirit between capital and labor").

12

## C.

Having determined that Knight Enterprises was neither a party nor a third-party beneficiary to the Arbitration Rider, we consider whether the district court abused its discretion by not compelling arbitration through the use of equitable estoppel.

In certain situations, a court may compel arbitration of a dispute between a party who is a signatory to an arbitration agreement and a party who is not. *See Am. Bankers*, 453 F.3d at 627. We have said that equity may estop a party "from asserting that the lack of another's signature on a written contract precludes enforcement of the contractor's arbitration clause when the party has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Id.* In other words, a court may employ equitable estoppel to avoid injustice where one person recognizes a contract as valid so that she may receive its benefits, but then denies its validity in order to avoid its burdens. *See id.*

In determining whether to apply equitable estoppel in this context, a court should look to see whether a party who has signed an agreement with an arbitration clause has otherwise relied on its terms. *See id.* For example, equitable estoppel may be appropriate when a party brings a lawsuit based on a contract (thus presuming its validity), but then seeks to escape an arbitration clause contained in that same document. "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.*

13

Knight Enterprises contends that's the case here. Weckesser's causes of action, it says, derive from the Services Agreement, which sets forth the terms of his work. That agreement incorporates the Arbitration Rider by reference. So, the reasoning goes, Weckesser can't claim the benefits of the Services Agreement by suing under it while simultaneously avoiding the arbitration clause contained in the Arbitration Rider. This argument fails for two reasons.

First, Weckesser's claims don't "arise out of and relate directly to" the operative agreements in this case. *See id.* We first consider the Arbitration Rider—the document that contains the arbitration clause. As the district court explained, Weckesser's claims "do not depend on any provision" of that agreement. *See Weckesser v. Knight Enters. S.E., LLC*, 228 F. Supp. 3d 561, 567 (D.S.C. 2017). Moreover, Knight Enterprises can point to no benefit Weckesser received from the Arbitration Rider sufficient to trigger estoppel. While it's possible (if unlikely) that Weckesser may have taken some abstract, theoretical comfort in knowing that claims Jeffry Knight had against him might be arbitrated rather than litigated (and that he would be entitled to the same), South Carolina courts have recognized that the mere "benefit" of mutual arbitration is thin indeed. *See Thompson v. Pruitt Corp.*, 784 S.E.2d 679, 688 (S.C. Ct. App. 2016); *Weckesser*, 228 F. Supp. 3d at 568 ("simply being party to an arbitration agreement" not "sufficient grounds to justify . . . equitable estoppel").

Knight Enterprises urges us to look beyond the Arbitration Rider to consider it alongside the Services Agreement as pieces of a whole. The district court declined to do so on the basis that the Arbitration Rider was a "separate contract." *Id.* at 566. But even

14

if we consider the Services Agreement too, the estoppel argument falls short. For one thing, Weckesser has asserted no breach of contract claims. His causes of action arise under state and federal worker-protection statutes, including the Fair Labor Standards Act and the South Carolina Payment of Wages Act. Weckesser's rights under those laws don't depend on the terms of the Services Agreement, and would exist absent any contract at all. *See Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (estoppel not appropriate where plaintiff seeks statutory remedy under Fair Credit Reporting Act rather than breach of underlying mortgage agreement); *cf. Goer v. Jasco Indus., Inc.*, 395 F. Supp. 2d 308, 315 (D.S.C. 2005) (arbitration required where "breaches of contract and fraud alleged by the Plaintiffs are inextricably intertwined with, and arise from" contracts containing arbitration clauses). Because the federal and state statutes afford Weckesser (and other putative class members) an "independent right to recover" against Knight Enterprises even without the Services Agreement or Arbitration Rider, *see id.*, these circumstances don't give rise to equitable estoppel.

Second, and more fundamentally, Weckesser's position doesn't require us to void, ignore, or invalidate either agreement. Equitable estoppel is based on the idea that "it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage." *Am. Bankers*, 453 F.3d at 627. Weckesser doesn't challenge the validity of either the Services Agreement or the Arbitration Rider. The parties simply disagree about what those contracts say. Under Weckesser's view, both documents may be perfectly valid agreements: the Services Agreement sets forth the terms under which

15

Weckesser will work as a technician for Knight Enterprises, and the Arbitration Rider governs any disputes he may have with its parent company, Jeffry Knight.

"The district court abuses its discretion when it commits an error [of] law or clearly errs in making a finding of fact." *Id.* at 629. Weckesser's claims in this case don't rely upon the Services Agreement or the Arbitration Rider, and he hasn't attempted to avoid the burdens of either document. All told, we can't say that the district court abused its discretion in declining to apply equitable estoppel.

III.

For the reasons given, we affirm the district court's judgment.

*AFFIRMED*

16