**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1252**

---

OSRX, INC.; OCULAR SCIENCE, INC.,

       Plaintiffs – Appellants,

   v.

GREGORY ANDERSON; IMPRIMISRX, LLC,

       Defendants – Appellees.

---

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Timothy M. Cain, District Judge.  (6:22-cv-01737-TMC)

---

Argued:  March 4, 2025                         Decided:  May 19, 2025

---

Before DIAZ, Chief Judge, AGEE and BENJAMIN, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished opinion.  Judge Agee wrote the opinion, in which Chief Judge Diaz and Judge Benjamin joined.

---

**ARGUED:**  Adam C. Bach, TONNSEN BACH, LLC, Greenville, South Carolina, for Appellants.  Keith Joseph Wesley, ELLIS GEORGE LLP, Los Angeles, California, for Appellees.  **ON BRIEF:**  Derek D. Tarver, Columbia, South Carolina, Robert C. Van Arnam, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellants.  Matthew L. Venezia, Los Angeles, California, Christopher Landau, Vincent Li, ELLIS GEORGE CIPOLLONE O'BRIEN ANNAGUEY LLP, Washington. D.C.; Richard J. Morgan, BURR & FORMAN LLP, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

2

AGEE, Circuit Judge:

Gregory Anderson worked for OSRX, Inc. and Ocular Science, Inc. (together, "Plaintiffs") for a couple of years as a Vice President of Sales before he was demoted. Shortly after his demotion, Anderson started working for Plaintiffs' market rival, ImprimisRx, LLC, and, according to Plaintiffs, brought along with him trade secrets and other confidential information he obtained while working for them. Plaintiffs sued Anderson and ImprimisRx (together, "Defendants") for their allegedly unlawful actions surrounding that transition and moved to enjoin Anderson from working for his new employer. Both Defendants separately moved to dismiss. Anderson argued that the terms of his old employment contract require that any claims Plaintiffs had against him were subject to arbitration, while ImprimisRx claimed that the district court lacked personal jurisdiction over it.

The district court agreed with Defendants, dismissed the case, and denied Plaintiffs' motion for a preliminary injunction as moot. For the reasons below, we affirm the district court's decision to compel Plaintiffs' claims against Anderson to arbitration but vacate and remand its finding that it lacked personal jurisdiction over ImprimisRx. Because the latter decision means Plaintiffs' preliminary injunction motion is no longer moot, we vacate the district court's decision on that motion as well.

I.

OSRX is an ophthalmic pharmaceutical company that produces specialized eye drops. Ocular Science is a biotechnology company. Though separate, the entities are

3

intertwined—Ocular Science "provides management and administrative services to OSRX, including marketing, sales, operations, finance, human resources, and distribution of OSRX products, pursuant to a written agreement between the parties." J.A. 12–13.

ImprimisRx is another ophthalmic pharmaceutical company and, as such, is alleged to be Plaintiffs' rival. Its sole member is a company called Harrow Health, which is incorporated in Delaware and headquartered in Tennessee. Plaintiffs and ImprimisRx both market, sell, and distribute their products nationally, including to customers in South Carolina.

In 2019, Anderson, a South Carolina resident, signed an employment agreement with Ocular Science to become its Vice President of Sales. And though OSRX was not a party to that contract, Anderson took on the same title and role for OSRX at that time as well. He was demoted after a couple of years to the role of "National Consultant" for Plaintiffs in late 2021 and executed another employment agreement with Ocular Science.

Those employment contracts had two provisions relevant to this appeal. First, they included standard confidentiality provisions, which required Anderson to not use or disclose confidential information outside of his work for Plaintiffs, including after his employment. And second, they contained a two-way arbitration provision, whereby both parties agreed to arbitrate any "employment-related dispute" or claim "arising out of, relating to, or resulting from [Anderson's] employment." J.A. 176; *see id.* ("[T]his Agreement to arbitrate also applies to any disputes that the company may have with me.").

In April 2022, just months after his demotion, Anderson attended an ophthalmology conference in Washington D.C. and met with ImprimisRx's CEO about heading up their

4

national sales team. He flew to Nashville the following week to discuss potential future employment with more ImprimisRx executives. According to Anderson, he never disclosed that he lived in South Carolina or "intended to work remotely from South Carolina" to anyone at ImprimisRx during those meetings. J.A. 168.

Anderson resigned from his employment with Plaintiffs on Friday, May 6, 2022, and began working as the Vice President of Sales for ImprimisRx the following Monday, May 9. According to Plaintiffs, ImprimisRx sought to hire Anderson so that he could provide them with confidential information that he obtained from Plaintiffs. Indeed, in the weeks leading up to his resignation, Anderson allegedly e-mailed himself (or copied onto a personal flash drive) certain of Plaintiffs' trade secrets and other confidential information. And since he began working for ImprimisRx, he has allegedly used those trade secrets to his and his new employer's benefit by poaching Plaintiffs' former customers. At all relevant times, Anderson worked remotely from his home in South Carolina.

Plaintiffs filed an amended complaint the next month in the District of South Carolina,[1] seeking to prevent Anderson from working for their competitor and to hold him and ImprimisRx accountable for conspiring to "misappropriate [their] confidential information and trade secrets and use them for [ImprimisRX's] commercial benefit." J.A. 10. Plaintiffs brought nine statutory and common law causes of action in total: (1) misappropriation of trade secrets in violation of the South Carolina Trade Secrets Act

---

[1] Plaintiffs originally filed suit against Anderson alone but amended their complaint to add ImprimisRx as a defendant.

5

and (2) the federal Defend Trade Secrets Act; (3) intentional interference with contractual relations and (4) prospective contractual relations; (5) breach of contract; (6) breach of fiduciary duty; (7) breach of common law duty of loyalty owed by an employee; (8) tortious interference with contract; and (9) aiding and abetting breach of fiduciary duty.[2] Shortly after filing the amended complaint, Plaintiffs moved for a preliminary injunction to prevent Anderson from working for ImprimisRx.

Both Defendants separately moved to dismiss Plaintiffs' amended complaint. Anderson filed a motion to dismiss and compel arbitration under Fed. R. Civ. P. 12(b)(3) and the Federal Arbitration Act, per the terms of his employment agreements. Plaintiffs challenged Anderson's motion on three grounds: (1) OSRX was not bound to arbitrate any claim because the contract was between Anderson and Ocular Science; (2) the arbitration provision did not cover claims arising out of Anderson's misconduct at Imprimis; and (3) even if all claims were subject to arbitration, Plaintiffs were still entitled to preliminary relief. In reply, Anderson argued for the first time that OSRX should be equitably estopped from denying the enforceability of the arbitration provision because though it was not technically a signatory to the employment agreement, it received direct benefits from that contract.

ImprimisRx moved to dismiss for lack of personal jurisdiction because it did not have sufficient minimum contacts within South Carolina for that purpose, or alternatively

---

[2] The first four counts are alleged against both defendants; five through seven against Anderson only; and eight and nine against ImprimisRx only.

6

to transfer venue to the Central District of California under Fed. R. Civ. P. 12(b)(2) and 28 U.S.C. § 1404(a). In response, Plaintiffs argued that Anderson's unlawful actions should be imputed to ImprimisRx because he was acting as its agent, giving South Carolina courts specific personal jurisdiction over the employer.

After several months, the district court held a short hearing to receive oral argument from the parties on the pending motions, where the parties were explicitly told their presentations would be "limited to twenty . . . minutes" and could only include argument. J.A. 7.

The district court granted Defendants' motions and denied Plaintiffs' motion for a preliminary injunction as moot, dismissing the case in its entirety in an omnibus order. It (1) found that OSRX was equitably estopped from arguing enforceability of the arbitration provision against it and concluded that all of Plaintiffs' claims against Anderson were subject to arbitration; (2) held that it lacked personal jurisdiction over ImprimisRx because Plaintiffs did not establish by a preponderance of the evidence that the court had personal jurisdiction over ImprimisRx; and (3) denied as moot Plaintiffs' motion for a preliminary injunction, since its other rulings compelled outright dismissal of the lawsuit. *See OSRX Inc. v. Anderson*, No. 6:22-cv-1737, 2023 WL 2472417, at *6–13 (D.S.C. Feb. 7, 2023).

Plaintiffs noted their timely appeal of those three decisions, and we have jurisdiction to review them under 28 U.S.C. § 1291.

7

II.

On appeal, Plaintiffs challenge all three of the district court's holdings. We address each identified issue in turn.

A.

Plaintiffs challenge the district court's decision to compel arbitration of OSRX's claims against Anderson on procedural and substantive grounds. First, they contend there is reversible error in the district court's decision to consider Anderson's estoppel argument because he raised it for the first time in his reply brief. Second, they assert the district court's finding that OSRX was equitably estopped from shirking arbitration was wrong. We review both challenges for abuse of discretion, and we will only disturb the district court's exercise of that discretion if it relies on a legal error or a clearly erroneous finding of fact. *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("We review a district court's decision to consider a waived argument for abuse of discretion."); *Am. Bankers Ins. Grp. v. Long*, 453 F.3d 623, 629 (4th Cir. 2006) (noting that while review of a decision compelling arbitration is typically de novo, when that "decision is based on principles of equitable estoppel, we review the district court's decision for abuse of discretion"). We see no such abuse here on either claim.

1.

Notwithstanding the general rule that arguments raised for the first time in reply briefs are deemed waived, "a district court may consider an argument raised for the first time on reply under appropriate circumstances." *De Simone*, 36 F.4th at 531. The district court's discretion in this regard is necessarily broad and depends on the specific

8

circumstances of the case. *See id.* In *De Simone*, for example, we found no abuse of discretion when the district court considered a similarly late argument that was "intimately related to the original grounds for the motion." *Id.* at 531 (cleaned up).

Here, the district court considered Anderson's equitable estoppel argument over OSRX's objection because Anderson's "initial motion assumed . . . that both Ocular [Science] and OSRX were bound by the Employment Agreement," and "the question of whether OSRX [wa]s subject to the arbitration provision therein was first raised in Plaintiffs' response." *OSRX, Inc.*, 2023 WL 2472417, at *4 n.8. Considering that reasoning in light of this case's circumstances, the district court did not abuse its discretion in entertaining Anderson's equitable estoppel argument, as it was intimately related to the original grounds for the motion.

Moreover, it was entirely reasonable that Anderson did not include an equitable estoppel argument predicated on OSRX not being named in his employment contract in his opening brief. That's because Plaintiffs' amended complaint (which did not include the employment agreement as an exhibit) is full of suggestions that OSRX *was* a party to Anderson's employment agreement, given the close relationship between it and Ocular Science. *See, e.g.*, J.A. 28 ("Anderson breached both his duties of loyalty and good faith to Plaintiffs when he . . . misappropriated confidential and proprietary business information and Trade Secrets from Plaintiffs, in violation of his Employment Agreement . . . ."); J.A. 29 ("The . . . Employment Agreement is a legally enforceable contract that prohibits Anderson from misappropriating or disclosing Plaintiffs' confidential and proprietary business information or Trade Secrets."). The district court therefore did not abuse its

9

discretion by allowing Anderson to respond to an argument he reasonably did not expect was coming. Indeed, that decision appears in line with the district court's local rules. *See* D.S.C. Local Rule 7.07 (permitting "repl[ies] to matters raised initially in a response to a motion"); *Bouchard v. Potter*, No. 3:11-cv-982, 2013 WL 489185, at *1 n.1 (D.S.C. Feb. 8, 2013) (interpreting that rule to mean a "reply is . . . appropriate if a party raises a new and unexpected legal theory in response to a" motion).

In *De Simone*, we also thought the fact that the upset party "could have sought leave to file a sur-reply," but did not, counseled in favor of finding no abuse of discretion on the district court's decision to consider an otherwise untimely argument. 36 F.4th at 532. Plaintiffs did not move to file a sur-reply here either, and their rationale for not doing so is not particularly convincing. Citing what they perceive as the district court's hostile "view of sur-replies"—which is only based on a previous decision from the district court and one of its standing orders that recognize the unremarkable proposition that sur-replies are not granted as a matter of course—Plaintiffs ostensibly did not move for leave to file a sur-reply because they thought the district court would not grant it. Reply Br. 8 & n.3; *see also* Opening Br. 33. However, the fact that Plaintiffs "could have sought leave to file a sur-reply," but did not, counsels in favor of finding no abuse of discretion on the district court's part in considering Anderson's equitable estoppel argument. *De Simone*, 36 F.4th at 532.

Consequently, we find no abuse of discretion in the district court's consideration of Anderson's equitable estoppel argument.

10

2.

Turning to the merits, the district court did not abuse its discretion in finding that OSRX[3] must arbitrate its claims against Anderson based on principles of equitable estoppel.

As a general matter, a party that did not sign a contract cannot be held to an arbitration provision contained therein. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000). The doctrine of equitable estoppel, which "rests on [the] simple proposition" that "it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage," provides an exception to that rule. *Am. Bankers Ins. Grp.*, 453 F.3d at 627 (quoting *Wachovia Bank, Nat'l Assoc. v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006)). "[I]n the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of [another's] signature on a written contract precludes enforcement of the contract's arbitration clause when [the non-signatory] has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Int'l Paper Co.*, 206 F.3d at 418 (cleaned up).

Equitable estoppel also applies when a non-signatory sues a signatory. In that situation, the non-signatory is bound by a contract's arbitration provision "when his

---

[3] As with the rest of their appeal, Plaintiffs briefed this issue together. However, Plaintiffs do not challenge that Ocular Science is bound to arbitrate its claims against Anderson by the terms of the employment agreement. So when referring to their arguments, we use "Plaintiffs," but when examining whether OSRX is equitably estopped, we refer to it alone.

11

underlying claims seek a 'direct benefit' from the contract containing the arbitration clause.'" *Am. Bankers Ins. Grp.*, 453 F.3d at 628 (citing *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 164 (4th Cir. 2004)). "Our job" in this context, therefore, "is to determine whether [OSRX] is seeking a direct benefit from the [employment agreement] between [Ocular Science] and [Anderson]." *R.J. Griffin & Co.*, 384 F.3d at 161. If it is, then it is equitably estopped from its efforts to avoid being compelled to arbitrate its claims against Anderson.[4]

The ability to sue for breach of a contract to which one is allegedly not a party is as direct a benefit as we can envision. OSRX sued Anderson for breach of his employment agreement—the same employment agreement that contains the arbitration provision which OSRX now says does not compel it to arbitrate that claim. But OSRX "cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated." *Int'l Paper Co.*, 206 F.3d at 418. That Plaintiffs

---

[4] Noted in a footnote of a response brief but nowhere else in briefing or on the record, Defendants assert that this issue is a matter of state law and not federal law. We have not previously treated it as such, but some other circuits have. *E.g.*, *NCMIC Ins. Co. v. Allied Pros. Ins. Co.*, 110 F.4th 1072, 1075 (8th Cir. 2024).

We will not reach that issue in this case for two important reasons. Most crucially, the parties don't grapple with the issue, and in our adversarial system our decisions are at their best when the parties present arguments on thorny issues. *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 782 (4th Cir. 2023) (explaining that "our adversarial system of justice" obligates "the parties . . . to present facts and legal arguments before a neutral and relatively passive decision-maker" (cleaned up)). Moreover, our law is in line with South Carolina's and California's—the two states whose law might apply if ours didn't—so the result would be unchanged. *See Pearson v. Hilton Head Hosp.*, 733 S.E.2d 597, 600–04 (S.C. Ct. App. 2012) (endorsing a direct benefits equitable estoppel theory); *Pillar Project AG v. Payward Ventures, Inc.*, 279 Cal. Rptr. 3d 117, 123 (Cal. App. 2021) (same).

12

are equitably estopped from challenging enforcement of the arbitration provision as to their breach of contract claim is not remarkable—Plaintiffs conceded as much in their reply brief. *See* Reply Br. 13 ("Plaintiffs concede that OSRX's breach of contract claim is subject to 'direct benefits' estoppel . . . .").

But Plaintiffs try to draw a line, saying OSRX is not equitably estopped from fighting arbitration on the *other* six claims it brought against Anderson because those claims allegedly seek to vindicate rights that are independent from the contract. Plaintiffs rely on our decision in *R.J. Griffin* in support of that argument, where we held a plaintiff's tort lawsuit "did not seek a 'direct benefit' from the contract" between the parties because those claims "were not based on any breach of the contract, but were instead based on duties created by state tort law." *Am. Bankers Ins. Grp.*, 453 F.3d at 630 (citing *R.J. Griffin & Co.*, 384 F.3d at 161–63).

We find Plaintiffs' reliance on *R.J. Griffin* unconvincing for the same reason we did in *American Bankers*. As we explained in that case, the duties owed—and allegedly broken—in *R.J. Griffin* "were created *entirely* by state tort law; if the builder and landowner had never entered into the building contract, the builder still could have been liable in tort to the owners." *Am. Bankers Ins. Grp.*, 453 F.3d at 630 (citing *R.J. Griffin & Co.*, 384 F.3d at 161–63) (emphasis added). The duties owed and broken were *not* created entirely by state tort law in *American Bankers*. Without the contract in *American Bankers*, the plaintiffs there "would have no basis for recovery" because their individual claims (a variety of tort claims and a statutory violation) were "dependent upon their allegation that [defendant] breached a duty created" by the contract. 453 F.3d at 630. Put another way,

13

although each individual claim was "phrased in tort," "without the alleged breach of the [contract], the [plaintiff] would have no cause to complain." *Id.*

That "significant" difference is what made us reject in *American Bankers* the same kind of *R.J. Griffin*-style argument OSRX makes here. *Am. Bankers Ins. Grp.*, 453 F.3d at 630. Without the underlying employment agreement that even OSRX acknowledges made Anderson its employee, OSRX would have no ground upon which to complain. In other words, the individual claims OSRX brought against Anderson were not "created entirely by state tort law." *Am. Bankers Ins. Grp.*, 453 F.3d at 630 (citing *R.J. Griffin & Co.*, 384 F.3d at 161–63). At the end of the day, OSRX's claims stem from Anderson's purported breach of his employment contract. And as we have explained, "no party suing on a contract should be able to enforce certain contract provisions while simultaneously attempting to avoid the terms of an arbitration provision contained therein." *United States v. Bankers Ins. Co.*, 245 F.3d 315, 323 (4th Cir. 2001).

The district court did not abuse its discretion in looking past OSRX's gamesmanship and compelling it to arbitrate all its claims against Anderson.

## B.

Next, Plaintiffs say the district court erred in finding that it lacked specific personal jurisdiction over ImprimisRx, again levying procedural and substantive challenges to that decision. We "review *de novo* the district court's ruling that it lacked personal jurisdiction" over a defendant. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).

1.

In setting out the legal standard for reviewing ImprimisRx's motion to dismiss for lack of personal jurisdiction, the district court quoted our language in *Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989), for the proposition that "the burden [is] on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *OSRX, Inc.*, 2023 WL 2472417, at \*10 (quoting *Combs*, 886 F.3d at 676) (alteration by the district court). The court then found that Plaintiffs "failed to carry [that] burden." *Id.* at \*11. Plaintiffs argue that at this early stage of the litigation, the district court should have held them to the lower *prima facie* standard instead of a preponderance of the evidence standard to show personal jurisdiction. We agree.

Whether to hold a plaintiff to a *prima facie* or preponderance of the evidence burden of proof depends entirely on the case's procedural posture. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). The *prima facie* standard applies "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint." *Id.* Conversely, a district court can only "require[] the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial" if it "conduct[s] an 'evidentiary hearing.'" *Id.* (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005)).

An "evidentiary hearing" in this context does not lend itself to a mechanical definition, but we do impose some baseline requirements: the district court must "afford the parties a fair opportunity to present both the relevant jurisdictional evidence and their

15

legal arguments." *Id.* So, for example, a district court properly applied the preponderance of evidence standard when reviewing an early Rule 12(b)(2) motion after it held a hearing on the motion during which it "never restrict[ed] either party on what evidence to present, what facts to argue, and what law to present." *Sneha Media & Ent., LLC v. Assoc. Broadcasting Co.*, 911 F.3d 192, 197 (4th Cir. 2018). Whether a party actually puts on jurisdictional evidence is not the touchstone to a court's decision on what standard to apply; rather, the district court simply must afford the party the opportunity to do so. *See id.*

In the present case, while the parties convened in court, there was no "evidentiary hearing." The district court imposed strict limitations on how the hearing would proceed, giving each party just "twenty [] minutes to make their arguments to the court" and five minutes for a response. J.A. 7. In short, it did not "afford[] the parties a fair opportunity to present" any "jurisdictional evidence." *Sneha Media & Ent., LLC*, 911 F.3d at 19 (quoting *Grayson*, 816 F.3d at 268).

For that reason, Plaintiffs only needed to make a *prima facie* showing that the district court had personal jurisdiction over ImprimisRx. Under the proper standard, the district court should have reviewed the parties' pleadings, motion papers, and any affidavits, "tak[ing] the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson*, 816 F.3d at 268. We therefore vacate and remand the district court's grant of ImprimisRx's Rule 12(b)(2) motion.

2.

Based on the foregoing, we do not address the parties' discussion on the substance of the specific personal jurisdiction question. On remand, assuming ImprimisRx renews its

16

motion, the district court should either (a) consider whether Plaintiffs satisfy the *prima facie* standard on the current record, or (b) allow for the development of a record of jurisdictional evidence following a proper evidentiary hearing, before then determining whether Plaintiffs can show the district court had personal jurisdiction by a preponderance of the evidence under our well-settled body of law.[5]

C.

Following our analysis above, we need not spend much time on Plaintiffs' last assignment of error—that the district court erred in denying their motion for a preliminary injunction as moot instead of entering the requested relief under the "hollow formality" doctrine outlined in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985).

Plaintiffs' motion sought preliminary injunctive relief against both ImprimisRx and Anderson. A condition precedent for the district court's denial of that motion as moot was

---

[5] That body of law, we feel compelled to clarify, does not allow for the categorical rule Plaintiffs try to advance here. According to Plaintiffs, an employee's "misconduct in the forum [state] as [an employer's] agent establishes specific personal jurisdiction" such that the district court need not conduct its typical due process personal jurisdiction analysis. *E.g.*, Opening Br. 14. We have never held that an employee's unlawful conduct, even taken as an agent for his employer, supersedes a court's due process specific personal jurisdiction analysis. *See generally dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119 (4th Cir. 2023). Such a fact may certainly come into play at some point in the well-settled three-pronged analysis, typically within the purposeful availment prong. *See Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (noting that the principal's "knowing continuation of" his agent's forum activity "demonstrates that his availment of Virginia's legal protections was purposeful"). But it is not a standalone exception to a court's typical practice in determining whether it should exercise jurisdiction over an out-of-state party. *Cf. dmarcian, Inc.*, 60 F.4th at 133 (rejecting such "wooden analysis").

17

its decision to dismiss ImprimisRx from suit for lack of jurisdiction. *OSRX Inc.*, 2023 WL 2472417, at *12 & n.14. By vacating the district court's decision to dismiss ImprimisRx at this point, Plaintiffs' claims against ImprimisRx remain extant and await further proceedings. And so, without regard to the merit of Plaintiffs' "hollow formality" argument, we vacate and remand the district court's denial of Plaintiffs' preliminary injunction motion as moot simply because it is no longer moot.

## IV.

The district court did not abuse its discretion in compelling OSRX to arbitrate its claims against Anderson based on principles of equitable estoppel, but it erred in holding Plaintiffs to the wrong standard of review for assessing if it had personal jurisdiction over ImprimisRx. For those reasons, the district court's judgment is

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

18